**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-24366-BB

**XYZ CORPORATION,**

Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS AND**
**UNINCORPORATED ASSOCIATIONS IDENTIFIED**
**ON SCHEDULE "A",**

Defendants.

_____/

**PLAINTIFF'S BRIEF IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Marvel Technology (China) Co. Limited ("Plaintiff"), by and through its undersigned counsel, hereby files this Motion for Summary Judgment ("Motion"), pursuant to Federal Rule of Civil Procedure 56, seeking an order that Defendants KMT-USA, Foncusun USA, 360Scope, MBOBAO-US, Froectry USA, and FEMOORER (collectively, "Defendants") infringe Plaintiff's U.S. Patent Nos. 11,719,380 (the "'380 Patent"), 11,720,000 (the "'000 Patent"), and D976,993 (the "'993 Patent") (collectively, "Plaintiff's Patents").  For the reasons stated herein, Plaintiff respectfully submits that there are no genuine issues of material fact concerning Defendants' infringement, and Plaintiff is entitled to judgment as a matter of law.

## I.   INTRODUCTION

After years of litigation, beginning in China and ultimately leading to this Court, the time has finally come for Defendants to be held accountable for their willful disregard of Plaintiff's earned patent rights.  The undisputed evidence exchanged during the course of this case shows that Defendants knowingly purchased infringing products previously adjudicated to infringe on Plaintiff's Patents for the sole purpose of trading on Plaintiff's goodwill here in the United States. Indeed, the evidence establishes, and there is no genuine dispute, that Defendants' infringing products satisfy each and every element of at least one claim of each of Plaintiff's Patents, and Defendants, with knowledge of the same, deliberately continued to sell such products in direct violation of federal patent law.  Defendants' egregious conduct has caused significant harm to Plaintiff, including lost profits and market confusion, and it is time that Defendants be held to account.  For the reasons given herein, the Court should grant Plaintiff's Motion, find that Defendants' willfully infringed Plaintiff's Patents, permanently enjoin further infringement, and order an award of damages, including enhanced damages, to make Plaintiff whole once more. Nothing short of doing so will deter the sort of willful disregard for federal patent law that Defendants have so flagrantly displayed.

## II.    FACTUAL BACKGROUND

Plaintiff filed the instant suit for infringement of two utility patents, the '380 Patent and the '000 Patent, as well as one design patent, the '993 Patent, on November 15, 2023.  (*See* ECF No. 1; ECF No. 8).  The '380 Patent is directed to a high-stability 360-degree photo booth. (Statement of Undisputed Material Facts ("SUMF") at ¶¶ 3-4).  The '000 Patent is directed to a 360-degree camera device having an atmosphere lamp.  (*See id.* at ¶¶ 7-8).  The '993 Patent is directed to an ornamental design for a camera platform.  (*See id.* at ¶ 10).

Claim 8 of the '380 Patent is exemplary of the high-stability 360-degree photo booth claimed therein, and it recites:

> A high-stability 360-degree photo booth, comprising:
>
> > a supporting stage;
> >
> > wherein the supporting stage comprises a supporting cover plate and a reinforcement frame;
> >
> > and a shock absorber is disposed between the supporting cover plate and the reinforcement frame;
> >
> > wherein [the] reinforcement frame comprises a plurality of sub-frames connected with a main shaft, and the reinforcement frame is stellar shaped, and the shock absorber has a stellar shape corresponding to the reinforcement frame.

(*Id.* at ¶ 4).

Claim 1 of the '000 Patent is exemplary of the 360-degree camera device having an atmospheric lamp claimed therein, and it recites:

> A 360-degree camera device having atmosphere lamp, comprising:
>
> > a supporting platform;
> >
> > a supporting spindle;
> >
> > a supporting base; and
> >
> > a rotating shooting bracket;
> >
> > > wherein the supporting platform comprises a first supporting element, a tempered glass, a first light source, and a reflecting

mirror; the first supporting element is configured to support the tempered glass; the tempered glass is a single-sided perspective glass comprising a light-transmitting surface and a reflecting surface; an interval area is disposed between the tempered glass and the reflecting mirror, the reflecting mirror and the reflecting surface are oppositely disposed; and the first light source is disposed in the interval area.

(*Id.* at ¶ 8).

A perspective view of the ornamental design for the camera platform claimed in the '993 Patent is depicted below:



(*Id.* at ¶ 10).

Discovery in this case commenced on March 25, 2024 (ECF No. 55 at 2), and has revealed that there are no genuine issues as to any material fact concerning Defendants' infringement of Plaintiff's Patents.  Specifically, there is no genuine dispute that (i) Plaintiff is the owner of Plaintiff's Patents, (ii) Plaintiff's Patents are valid and enforceable, (iii) Plaintiff's rights in Plaintiff's Patents are prior in time to any purported rights Defendants claim in the inventions and designs covered by Plaintiff's Patents, and (iv) Defendants' conduct – the sale of goods covered by Plaintiff's Patents – constitutes willful patent infringement.  (SUMF at ¶¶ 1-29).

The undisputed evidence establishes that on May 27, 2022, Plaintiff sent a cease-and-desist letter to Shenzhen Kemeituo (also translated to English as "Cometuo" or "Cometo") Technology Co., Ltd. ("Kemeituo," "Cometuo," or "Cometo"), a Chinese company, regarding Kemeituo's infringement of Chinese Patent Application 20222087641.9, to which the '380 Patent claims priority, and Chinese Patent Application 202221031966.8, to which the '000 Patent claims priority, based on Kemeituo's sale of infringing 360-degree photo booths. (*Id.* at ¶ 11). Shortly thereafter, Plaintiff filed suit against Kemeituo in the Shenzhen Intermediate People's Court in China, and the Intermediate People's Court found that Kemeituo had infringed on Plaintiff's patent rights, noting that "[t]echnical analysis confirmed that the accused product falls within the scope of the patented claims," and ordering that Kemeituo "immediately cease manufacturing, offering for sale, and selling products infringing the Plaintiff's patent rights." (*Id.* at ¶ 12). There is also no genuine dispute that Defendants sell infringing products that are manufactured and/or supplied by Kemeituo. (*Id.* at ¶ 13). Nor is there any dispute that Defendants' products are the same or substantially the same, such that each of Defendants' products infringes Plaintiff's Patents for precisely the same reasons. (*Id.* at ¶¶ 13-26).

By way of example, Defendants' products infringe on, at least, claim 8 of the '380 Patent at least because each infringing product encompasses a high-stability 360-degree photo booth, comprising (i) a supporting stage, (ii) wherein the supporting stage comprises a supporting cover plate and a reinforcement frame, (iii) and a shock absorber is disposed between the supporting cover plate and the reinforcement frame, (iv) wherein the reinforcement frame comprises a plurality of sub-frames connected with a main shaft and the reinforcement frame is stellar shaped, and the shock absorber has a stellar shape corresponding to the reinforcement frame. (*Id.* at ¶¶ 13-18). Defendant KMT-USA's infringing product exemplifies how each of Defendants' infringing

products contain each and every element of claim 8 of the '380 Patent.  (*Infra* Sec. IV.A).

Defendants' products also infringe on, at least, claim 1 of the '000 Patent at least because each infringing product encompasses a 360-degree camera device having atmosphere lamp, comprising (i) a supporting platform, (ii) a supporting spindle, (iii) a supporting base, and (iv) a rotating shooting bracket wherein the supporting platform comprises a first supporting element, a tempered glass, a first light source, and a reflecting mirror, the first supporting element is configured to support the tempered glass, the tempered glass is a single-sided perspective glass comprising a light-transmitting surface and a reflecting surface, an interval area is disposed between the tempered glass and the reflecting mirror, the reflecting mirror and the reflecting surface are oppositely disposed, and the first light source is disposed in the interval area.  (SUMF at ¶ 19).  Defendant KMT-USA's infringing product is exemplary of how each of Defendants' infringing products contain each and every element of claim 1 of the '000 Patent.  (*Infra* Sec. IV.A).

The design of Defendants' infringing products also conveys a more than substantially similar visual impression when compared to the '993 Patent, and creates an overall appearance which an ordinary observer would perceive as nearly identical to the ornamental design covered by the '993 Patent.  (SUMF at ¶¶ 20-25).  Indeed, Defendants' infringing products are substantially, if not completely, identical to the design covered in the '000 Patent.  (*Infra* Sec. IV.B).

Finally, despite Defendants' blatant awareness of Plaintiff's Patents, Defendants nonetheless continued to sell their infringing products.  Their conduct thus constitutes willful infringement of Plaintiff's Patents.  (SUMF at ¶ 29).  As a result, Plaintiff is entitled to monetary and injunctive relief.  (*Infra* Sec. IV.D).

### III.   LEGAL STANDARDS

The standard for summary judgment is well-established: summary judgment is proper "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Beckson Marine v. Nfm, Inc.*, 292 F.3d 718, 722-723 (Fed. Cir. 2002). In a patent infringement case, such as this one, "[a] patent shall be presumed valid," 35 U.S.C. § 282, and the party challenging the validity of a patent bears the burden of proving "by clear and convincing evidence" that the patent is invalid. *Quinton Instruments Co. v. Impra, Inc.*, 71 F.3d 1573, 1576 (Fed. Cir. 1995); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019); *Beckson Marine*, 292 F.3d at 725. Anticipation and infringement are both questions of fact, resolution of which is proper on summary judgment "when the underlying factual inquiries present no lingering genuine issues." *Beckson Marine*, 292 F.3d at 722-723.

Infringement of a utility patent "occurs when an infringer, without permission, 'makes, uses, offers to sell or sells any patented invention.'" *VPR Brands, LP v. HQDTech USA LLC*, No. 21-CV-21678, 2021 U.S. Dist. LEXIS 207912, at *14 (S.D. Fla. Oct. 28, 2021) (Bloom, D.J.) (quoting 35 U.S.C. § 271(a)). To establish infringement of a utility patent, a plaintiff bears the burden of proving that the "infringing product [] practice[s] all elements of a patent claim." *Id.* (internal quotations omitted). "Claim language defines claim scope," and "[a]s a general rule, claim language carries the ordinary meaning of the words in their usage in the field of invention." *Beckson Marine*, 292 F.3d at 723; *see also IQRIS Techs. LLC v. Point Blank Enters.*, No. 21-CV-61976, 2022 U.S. Dist. LEXIS 212222, at *5 (S.D. Fla. Nov. 23, 2022) (Bloom, D.J.). Indeed, "[t]here is a 'heavy presumption in favor of the ordinary meaning of claim language.'" *IQRIS Techs.*, 2022 U.S. Dist. LEXIS 212222, at *5 (quoting *Johnson Worldwide Ass'n, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed Cir. 1999)).

Finally, "[a] design patent protects the nonfunctional aspects of an ornamental design as a whole and as shown in the patent." *Volkswagen Group of America, Inc. v. Varona*, No. 19-CV-24838, 2021 U.S. Dist. LEXIS 13659, at *26 (S.D. Fla. Jan. 25, 2021).  Summary judgment of design patent infringement is proper when "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same," and "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.* (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871)); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008).  The "proper comparison" requires "a side-by-side view" of the drawing in the design patent and the accused products, and "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Varona*, 2021 U.S. Dist. LEXIS 13659, at *26-27 (quoting *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1304 (Fed. Cir. 2010)).

## IV.   ARGUMENT

There is no genuine dispute that Defendants infringe Plaintiff's Patents.  *First*, Defendants' infringing products contain each and every element of, at least, claim 8 of the '380 Patent and claim 1 of the '000 Patent, either literally or under the doctrine of equivalents.  *Second*, Defendants' infringing products are substantially the same as the designs covered by the '993 Patent, such that an ordinary observer would be deceived into purchasing Defendants' infringing products, supposing them to be Plaintiff's patented design.  *Third*, there is no genuine dispute that Plaintiff's Patents are valid and enforceable.  Indeed, Defendants have presented no admissible evidence – or likely to be admissible evidence – to demonstrate patent invalidity by any measure, let alone clearly and convincingly.  And, *fourth*, Plaintiff is entitled to injunctive and monetary relief.  For all of these reasons, Plaintiff's Motion should be granted in its entirety.

## A. THERE IS NO GENUINE DISPUTE THAT THE ACCUSED PRODUCTS INFRINGE CLAIM 8 OF THE '380 PATENT AND CLAIM 1 OF THE '000 PATENT

There is no genuine dispute that Defendants' products infringe, at least, claim 8 of the '380 Patent. Defendants were "without permission," making, using, offering to sell and selling Plaintiff's patented invention, and their infringing products practice all elements of, at least, claim 8 of the '380 Patent. *See VPR Brands*, 2021 U.S. Dist. LEXIS 207912, at *14; *see also* 35 U.S.C. § 271(a). As set forth *supra* Section II, claim 8 of the '380 Patent encompasses "[a] high-stability 360-degree photo booth." There is no genuine dispute that Defendants products encompass such 360-degree photo booths:



(SUMF at ¶ 15; *see also id.* at ¶ 18).

There is also no genuine dispute that Defendants' infringing 360-degree photo booths comprise a "supporting stage":



(SUMF at ¶ 15; *see also id.* at ¶ 18).

Nor is there any genuine dispute that the supporting stage "comprises a supporting cover plate and a reinforcement frame":



(SUMF at ¶ 15; *see also id.* at ¶ 18).

There is also no genuine dispute that Defendants' infringing products contain "a shock absorber" that "is disposed between the supporting cover plate and the reinforcement frame":



(SUMF at ¶ 15; *see also id.* at ¶ 18).

Finally, there is no genuine dispute that Defendants' infringing products contain a

"reinforcement frame" comprising "a plurality of sub-frames connected with a main shaft, and the reinforcement frame is stellar shaped, and the shock absorber has a stellar shape corresponding to the reinforcement frame":



(SUMF at ¶ 15; *see also id.* at ¶ 18).

"There is a 'heavy presumption in favor of the ordinary meaning of claim language.'" *IQRIS Techs.*, 2022 U.S. Dist. LEXIS 212222, at *5 (quoting *Johnson*, 175 F.3d at 989). "Moreover, judges are free to rely on dictionaries at any time during the process of construing claims so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014). Claim construction is a question of law. *Id.* at 854.

In this case, there is no genuine dispute that Defendants' infringing products meet each and every element of, at least, claim 8 of the '380 Patent. When properly construed in accordance with their plain and ordinary meaning, the elements of claim 8 are readily satisfied. The fact that the reinforcement frame of Defendants' infringing products is more square-like than the pentagonal

reinforcement frame depicted in one embodiment of the '380 Patent is of no relevance.  Courts may not "improperly narrow[] the scope of claim[s] . . . by importing limitations from the specification." *See Beckson Marine*, 292 F.3d at 723.  In other words, the fact that one embodiment of the invention claimed in the '380 Patent depicts a more pentagonal reinforcement frame than that used by Defendants is of no moment.  Instead, this Court's analysis must focus on whether Defendants' infringing products meet the "stellar shaped" element of claim 8 of the '380 Patent.  And, when properly construed in accordance with its plain and ordinary meaning, there is no genuine dispute that Defendants' infringing products readily meet this element.

The plain and ordinary meaning of the term "stellar" is "of a star or stars."  *See, e.g.*, *Stellar*, Cambridge Dictionary, available at https://dictionary.cambridge.org/us/dictionary/english/stellar (last visited Mar. 27, 2025); *Stellar*, Merriam-Webster, available at https://www.merriam-webster.com/dictionary/stellar (last visited Mar. 27, 2025); *Stellar*, Brittanica, available at https://www.britannica.com/dictionary/stellar (last visited Mar. 27, 2025).[1]  Stars, of course, can have four perimetric sides, as with the more square-like reinforcement frame used in Defendants' infringing products, or five perimetric sides, as with the more pentagonal reinforcement frame depicted in an embodiment of the '380 Patent:



The use of a four-sided reinforcement frame in Defendants' products thus literally infringes

---

[1] The Court may take judicial notice of the dictionary definition of the term "stellar."  *See, e.g.*, *Robinson v. Liberty Mutual Ins. Co.*, 958 F.3d 1137, 1142 (11th Cir. 2020) ("We also reject the [] argument that the district court could not take 'judicial notice' of dictionary definitions . . . .").

the element of claim 8 requiring a "stellar" shaped reinforcement frame when this element is properly construed, as a matter of law, in accordance with its plain and ordinary meaning. (SUMF at ¶¶ 16-17). And, even if the more square-like reinforcement frame of Defendants infringing products did not literally meet the "stellar shaped" element of claim 8 – it does – the use by Defendants of a more square-like reinforcement frame than that depicted in the embodiments disclosed in the '380 Patent is also insubstantially different, and does not alter the structure, function or operation of the claimed invention in any material way. (SUMF at ¶ 18). Put differently, a four-sided reinforcement frame is interchangeable with a five-sided reinforcement frame, and thus, Defendants products would still infringe claim 8 of the '380 Patent under the doctrine of equivalents. *See, e.g.*, *Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.*, 743 F.3d 831, 834 (Fed. Cir. 2014) ("It has long been clear that known interchangeability weighs in favor of finding infringement under the doctrine of equivalents.").

There is also no genuine dispute that Defendants' products infringe, at least, claim 1 of the '000 Patent. Defendants' infringing products contain each and every element of claim 1 of the '000 Patent, either literally or under the doctrine of equivalents, and Defendants cannot credibly contend otherwise. Indeed, even a cursory review of Defendants' infringing products demonstrates that such products encompass a 360-degree camera device having atmosphere lamp, comprising (i) a supporting platform, (ii) a supporting spindle, (iii) a supporting base, and (iv) a rotating shooting bracket, wherein the supporting platform comprises a first supporting element, a tempered glass, a first light source, and a reflecting mirror, the first supporting element is configured to support the tempered glass, the tempered glass is a single-sided perspective glass comprising a light-transmitting surface and a reflecting surface, an interval area is disposed between the tempered glass and the reflecting mirror, the reflecting mirror and the reflecting

surface are oppositely disposed, and the first light source is disposed in the interval area:



(SUMF at ¶ 20).

In short, there is no genuine dispute that Defendants' products infringe, at least, claim 8 of the '380 Patent, and claim 1 of the '000 Patent. All Defendants purchase the same products from Kemeituo, who was previously adjudicated as having infringed on the very applications to which Plaintiff's Patents claim priority,[2] and all Defendants infringe for precisely the same reason. (SUMF at ¶¶ 13-20). Because each and every element of claim 8 of the '380 Patent and claim 1 of the '000 Patent can be found in Defendant's infringing products, summary judgment of infringement is proper.

### B. THERE IS NO GENUINE DISPUTE THAT THE ACCUSED PRODUCTS INFRINGE THE '993 PATENT

There is also no genuine dispute that Defendants' products infringe the '993 Patent because "in the eye of an ordinary observer, giving such attention as a purchaser usually gives," the designs

---

[2] "Although judgments rendered in a foreign nation are not entitled to the protection of full faith and credit, American courts will normally accord considerable deference to foreign adjudications as a matter of comity." *King v. Cessna Aircraft Co.*, No. 3-CV-20482, 2010 U.S. Dist. LEXIS, 131899, at *31 (S.D. Fla. Sept. 13, 2010) (citing *Hilton v. Guyot*, 159 U.S. 113, 163 (1895)).

of Defendants' products "are substantially the same" as that covered by the '993 Patent, and "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other."  *Varona*, 2021 U.S. Dist. LEXIS 13659, at *26 (quoting *Gorham*, 81 U.S. 511); *see also Egyptian Goddess*, 543 F.3d at 670.  The Court need only conduct a side-by-side comparison of the design claimed in the '993 Patent and the designs of Defendants' infringing products to confirm that no reasonable jury could conclude otherwise.  *See id.* at *26-27.

| Defendant | Side-by-Side Comparison |
|---|---|
| KMT-USA |  |
| Foncusun USA |  |
| 360Scope |  |



| Defendant | Side-by-Side Comparison |
|---|---|
| **MBOBAO-US** | |
| **Froectry USA** | |
| **FEMOORER** | |

(SUMF at ¶¶ 21-26).

As depicted above, Defendants' infringing products encompass designs substantially, if not completely, identical to the design covered by the '993 Patent, and no reasonable jury could conclude otherwise. Indeed, "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Varona*, 2021 U.S. Dist. LEXIS 13659, at *26-27 (quoting *Crocs*, 598 F.3d at 1304). And, there are not even minor differences

between the design claimed in the '993 Patent and the designs of Defendants' infringing products. Accordingly, summary judgment of infringement is proper.

## C.  THERE IS NO GENUINE DISPUTE THAT PLAINTIFF'S PATENTS ARE VALID AND ENFORCEABLE

"A patent shall be presumed valid," 35 U.S.C. § 282, and the party challenging the validity of a patent bears the burden of proving "by clear and convincing evidence" that the patent is invalid.  *Quinton Instruments*, 71 F.3d at 1576; *see also Cellspin*, 927 F.3d at 1319; *Beckson Marine*, 292 F.3d at 725.  Summary judgment is appropriate "when there is an absence of any admissible evidence to support a material fact." *Causey v. U.S.*, No. 21-CV-2046, 2024 U.S. Dist. LEXIS 229339, at *2 (M.D. Fla. Dec. 19, 2024).  In other words, "[w]hen a party fails to proffer a sufficient showing to establish the existence of an element on which that party will bear the burden of proof at trial, there is no genuine dispute regarding a material fact." *Id.*  Such is precisely the case here with respect to Defendants' claims of patent invalidity.

While Defendants contend that Plaintiff's Patents are invalid, purportedly because of allegedly anticipatory sales predating the priority of Plaintiff's Patents, Defendants have presented no admissible evidence – or likely to be admissible evidence – to meet their burden to prove, by clear and convincing evidence, that Plaintiffs' Patents are in fact invalid.  *First*, none of Defendants' purported evidence of invalidity is admissible, for the reasons stated by Plaintiff in response to Defendants' prior motion to dissolve the preliminary injunction filed in this case, including because such evidence is unauthenticated, unverified, and rests on hearsay not subject to any exception.  (*See* ECF No. 91 at 14-16).  *Second*, even if Defendants' purported evidence was admissible – again, it is not – the outcome would not change.  Defendants' purported evidence does not establish, clearly and convincingly that, as a matter of fact, Plaintiffs' Patents are invalid.

In fact, to the extent that Defendants attempt to rely on purportedly anticipatory sales by Kemeituo, Kemeituo itself tried – and failed – to make this argument before the U.S. District Court for the Northern District of Illinois.  (SUMF at ¶ 28).  Defendants should not be heard to rehash an argument that Kemeituo itself tried and failed to make, particularly in view of the fact that Kemeituo is not a participant in this action and cannot be cross-examined.

In short, Defendants have not, and cannot, meet their burden of establishing invalidity by clear and convincing evidence.  And, because Defendants infringe each and every element of Plaintiffs' Patents, summary judgment in Plaintiff's favor is proper.

### D.  PLAINTIFF IS ENTITLED TO INJUNCTIVE AND MONETARY RELIEF

Finally, Plaintiff is entitled to injunctive and monetary relief.  As set forth above, there is no genuine dispute that Defendants' products infringe Plaintiffs' Patents.  There is also no dispute that a court's analysis of whether to grant injunctive relief "proceeds with an eye to the 'long tradition of equity practice' granting injunctive relief upon finding of infringement in the vast majority of patent cases."  *Daka Rsch., Inc. v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, No. 22-CV-60246, 2023 U.S. Dist. LEXIS 122528, at *9 (S.D. Fla. Jul. 14, 2023).  Such tradition plainly supports injunctive relief where, as here, Defendants' infringement is willful and causing ongoing harm and market confusion.  (SUMF at ¶ 29).  Indeed, "[a]bsent adverse equitable considerations," none of which are present here, "the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with infringement."  *See id.* at *9-10 (quoting *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305 (Fed. Cir. 2021)).  As such, injunctive relief is proper.

In addition, there is no dispute that Plaintiff is entitled to damages for Defendants' past infringement in an amount "adequate to compensate for the infringement, but in no event less than

a reasonable royalty." 35 U.S.C. § 284; *see also Daka Rsch.*, 2023 U.S. Dist. LEXIS 122528, at

*12-13. Thus, because, as set forth above, there is no genuine dispute as to any material fact

concerning Defendants' infringement, the only question left to be determined is the amount of

damages to which Plaintiff is entitled, and the extent of any enhanced damages for Defendants'

plainly willful infringement. *See, e.g.*, *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d

1229, 1244 (Fed. Cir. 2017). In that regard, Plaintiff is entitled to statutory damages under 35

U.S.C. Section 284, which provides that a party whose patent has been infringed is entitled to

receive "damages adequate to compensate for the infringement[.]" 35 U.S.C. § 284 (alteration

added).

There are two methods by which courts calculate damages under section 284. *See Hanson

v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983). *First*, if the record permits

the determination of actual damages in the form of lost profits, that determination accurately

measures loss. *See id. Second*, if actual damages cannot be ascertained, a reasonable royalty may

be awarded. *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) (citation

omitted); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed. Cir.1995). In either

situation, the patent owner bears the burden of proof. *See BIC Leisure Prods., Inc. v. Windsurfing

Int'l, Inc.*, 1 F.3d 1214, 1217 (Fed. Cir. 1993) (citation omitted). Here, there is no genuine dispute

as to the profits that Plaintiff has lost.

To measure damages by lost profits, the patentee must establish, by a preponderance of the

evidence, that but for the infringement, he would have earned the profits he asserts were lost.

*Hebert v. Lisle Corp.* 99 F.3d 1109, 1119 (Fed. Cir. 196) (citing *Aro Mfg. Co. v. Convertible Top

Replacement Co,* 377 U.S. 476, 507 (1964). A way to demonstrate the but-for causal relationship

between infringement and lost profits is through the *Panduit* test, which requires the patent holder

18

to establish by reasonable probability (i) demand for the patented product, (ii) an absence of acceptable non-infringing substitutes, (iii) the marketing and manufacturing capability to exploit demand, and (iv) the amount of profit that would have been made. *Panduit v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir.1978).

Here, Plaintiff has shown that the patented product is widely sold in the United States through e-commerce[3]. In the last three years combined, Plaintiff has sold over ▨▨▨▨▨ ▨▨ in products embodying Plaintiff's patents. (SUMF at ¶ 29, Zhang Decl. ¶ 14). This number is expected to increase, particularly once the infringement ceases. (SUMF at ¶ 29, Zhang Decl. ¶ 14). These sales show there is a demand for this product. For the second element of the *Panduit* test, Plaintiff has investigated the market for similar products and determined there are no acceptable non-infringing substitutes for Plaintiff's patented product. (SUMF at ¶ 29, Zhang Decl. ¶ 15). In fact, the sheer number of defendants infringing on Plaintiff's patent shows that there are no acceptable non-infringing alternatives to Plaintiffs Patents. In this lawsuit alone, Plaintiff identified close to 150 Defendants commercializing a product that is infringing Plaintiff's Patents. (SUMF at ¶ 29, Zhang Decl. ¶ 15). For the third element, Plaintiff has the manufacturing and marketing capabilities of exploiting and meeting the demand. Plaintiff states that the sales have not ceased since the product was first introduced in the market in the year 2022, despite a decline due to the widespread breach. Plaintiff has been able to meet the demand of its patented product. To date, Plaintiff has not faced any production challenges. (SUMF at ¶ 29, Zhang Decl. ¶ 16). Finally, with regard to the profit that Plaintiff would have made (the fourth element), Plaintiff has shown that it lost ▨▨▨▨▨▨▨. (SUMF at ¶ 29, Zhang Decl. ¶¶ 18-19). In the alternative,

---

[3] Plaintiff also sells through its website. Jointly with the product itself, Plaintiff's website has information of products sold and accompanying patent numbers, thereby providing notice of patent ownership. (SUMF at ¶ 29, Zhang Decl. ¶ 21).

for design patent infringement, Defendants "shall be liable to the patent owner to the extent of his total profit, but not less than $250." 35 U.S.C. § 289.

In addition to its lost profits, as alluded to, Plaintiff intends to seek enhanced damages pursuant to 35 U.S.C. § 284.  Under Section 284, district courts enjoy "the discretion to award enhanced damages against those guilty of patent infringement" in "egregious cases of misconduct beyond typical infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016).  As set forth herein, the facts of this case warrant such an enhanced award of damages.  There is no genuine dispute that Defendants willfully infringed on Plaintiff's Patents, with full knowledge of the existence of Plaintiff's Patents, and the prior judgment against Defendants' manufacturer, Kemeituo.  Nonetheless, they deliberately chose to continue their infringing acts, all to the detriment of Plaintiff and its rights under the federal patent laws, for no purpose other than to line their own pockets.  In short, to call their conduct "characteristic of [] pirate[s]" would be to put it mildly.  Enhanced damages are, therefore, more than warranted.  *See Halo*, 579 U.S. at 103-104.

Lastly, pursuant to 35 U.S.C. § 285, and case law (including *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)), Plaintiff respectfully requests an award of reasonable attorneys' fees, as this is an exceptional case warranting such relief.  Plaintiff reserves the right to further show entitled after judgment has been entered in its favor.

## V.    CONCLUSION

For at least the reasons given herein, Plaintiff respectfully requests that the Court grant Plaintiff's Motion and find that there are no genuine issues of material fact, that Defendants infringe Plaintiff's Patents, that each of Plaintiff's Patents is valid and enforceable, and that Plaintiff is entitled to judgment as a matter of law and for damages as stated herein and for

injunctive relief. Should the Court require further testimony on damages, Plaintiff respectfully requests a hearing regarding Plaintiff's damages.

Dated: March 27, 2025

Respectfully submitted,

**LAW FIRM OF RUBIO & ASSOCIATES, P.A.**
Attorneys for Plaintiff
8950 SW 74 Ct., Suite 1804
Miami, FL 33156
Telephone: (786) 220-2061
Facsimile: (786) 220-2062
Email: hrubio@rubiolegal.com
Email: frubio@rubiolegal.com
Email: info@rubiolegal.com

By: _/s/ Humberto Rubio_
Humberto Rubio, Jr., Esq.
Florida Bar No. 36433
Felipe Rubio, Esq.
Florida Bar No. 123059

***Attorneys for Plaintiff***
*Marvel Technology (China) Co. Limited*