**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-cv-24366-BLOOM/Torres**

MARVEL TECHNOLOGY (CHINA),
Co. LTD.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Marvel Technology (China) Co. Ltd.'s

("Plaintiff") Motion for Summary Judgment ("Motion"). ECF No. [186]. Defendants KMT-USA,

Foncusun USA, 360Scope, MBOBAO-US, Froectry USA, and FEMOORER (collectively

"Defendants") filed a Response, ECF No. [198], to which Plaintiff filed a Reply. ECF No. [203].

The Court subsequently ordered Defendants to file a Sur-Reply, ECF No. [209], to which Plaintiff

was permitted to file a Reply. ECF No. [212]. The Court has carefully reviewed the Motion, all

opposing and supporting submissions,[1] the record in this case, the applicable law, and is otherwise

fully advised. For the reasons set forth below, Plaintiff's Motion is granted.

### I.      BACKGROUND

On November 15, 2023, Plaintiff filed the present action for patent infringement alleging

that Defendants, through e-commerce stores, are advertising, promoting, marketing, offering for

---

[1] Plaintiff supported its Motion with a Statement of Undisputed Material Facts ("SMF"), ECF No. [187], along with supporting Exhibits. Defendants filed a Response and Counter Statement of Material Facts, ECF No. [199] ("CSMF").

sale, displaying, and soliciting for sale, Plaintiff's federally registered patents, in violation of federal patent law. *See generally* ECF No. [1]. Plaintiff thereafter filed an Amended Complaint, ECF No. [8], asserting a patent infringement claim against Defendants under the Patent Act, 35 U.S.C. § 101 *et seq.*, and 35 U.S.C. § 271, seeking monetary damages and injunctive relief. *Id.*

The Amended Complaint contains one count alleging Defendants are infringing upon the following interrelated patents: (1) Utility Patent, No. US 11,719,380, for a high-stability 360-degree photo booth (the "'380 Patent"); (2) Utility Patent, No. US 11,720,000, for a 360-degree camera device having an atmosphere lamp (the "'000 Patent"); and (3) Design Patent, No. US D976,993 S, for a camera platform (the "'993 Patent") (collectively "Plaintiff's Patents"). Plaintiff alleges Defendants deliberately infringed on Plaintiff's Patents by their unauthorized manufacture, importation, offer for sale, sale, and distribution of copies of Plaintiff's goods through Internet-based e-commerce stores and interactive commercial Internet websites. ECF No. [8] ¶¶ 8, 18, 25.

In its instant Motion, Plaintiff argues that summary judgment is appropriate on its patent infringement claim because the undisputed evidence reflects that "(i) Plaintiff is the owner of Plaintiff's Patents, (ii) Plaintiff's Patents are valid and enforceable, (iii) Plaintiff's rights in Plaintiff's Patents are prior in time to any purported rights Defendants claim in the inventions and designs covered by Plaintiff's Patents, and (iv) Defendants' conduct—the sale of goods covered by Plaintiff's Patents—constitutes willful patent infringement." ECF No. [186] at 3.

Defendants respond that genuine issues of material fact preclude summary judgment. According to Defendants, Plaintiff's patent infringement claim is fatally flawed because the validity of the '380 and '993 Patents have been undermined by the invalidation of their Chinese priority patents, and the '380, '993, and '000 Patents are all invalidated by prior art. ECF No. [198] at 2. Furthermore, even assuming Plaintiff's Patents are valid, Defendants maintain that their

products do not infringe on Plaintiff's Patents "as they lack key claim elements (e.g., 'stellar-shaped' reinforcement frames in the '380 [P]atent, 'single-sided perspective glass' in the '000 Patent, and the ornamental design of the '993 Patent)." *Id.* Defendants also contend that Plaintiff's "failure to provide purchase records or physical evidence of the accused products" further precludes any infringement claims. *Id.*[2]

## II.   MATERIAL FACTS

Based on the parties' respective statements of material facts, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.

### A.  Plaintiff's Patents

#### i.   U.S. Patent No. 11,719,380 ("'380 Patent")

Plaintiff is the owner of U.S. Patent No. 11,719,380 ("'380 Patent"), which was granted by the United States Patent and Trademark Office ("USPTO") on August 8, 2023. ECF No. [187] at ¶ 1. While the '380 Patent claims priority to Chinese Patent Application 2022220876418.9, filed on April 15, 2022, Defendants dispute the presumptive validity of the '380 Patent. *See* ECF No. [187] at ¶ 2; ECF No. [199] at 2.

"The '380 Patent generally relates to the technical field of photographic camera devices, [and] in particular[,] a high-stability 360-degree photo booth." ECF No. [187] at ¶ 3. Claim 8 of the '380 Patent specifically encompasses "[a] high-stability 360-degree photo booth" comprising: "a supporting stage," which includes (1) "a supporting cover plate and a reinforcement frame" comprising of "a plurality of sub-frames connected with a main shaft," and (2) "a shock absorber

---

[2] Defendants also accuse Plaintiff of engaging in bad faith conduct in obtaining the preliminary injunction in this case. *See* ECF No. [198] at 1. Based on this alleged misconduct, Defendants request sanctions. *Id.* However, a request for sanctions in a response to summary judgment is inappropriate and the Court will not consider such a requestion at this juncture.

disposed between the supporting cover plate and the reinforcement frame." *Id.* at ¶ 4. Both the reinforcement frame and shock absorber are stellar shaped. *Id.*

### ii.    U.S. Patent No. 11,720,000 ("'000 Patent")

Plaintiff is also the owner of U.S. Patent No. 11,720,000 ("'000 Patent"), which the USPTO granted on August 8, 2023. *Id.* at ¶ 5. "The '000 Patent claims priority to Chinese Patent Application 202221031966.8, filed on April 29, 2022;" however, Defendants dispute the validity of the '000 Patent as well. ECF No. [187] at ¶5-6; ECF No. [199] at ¶¶ 5-6. The '000 Patent, like the '380 Patent, relates to the technical field of photographic camera devices. ECF No. [187] at ¶ 7. In particular, the '000 Patent relates to a "360-degree camera device having [an] atmosphere lamp." *Id.* Independent claim 1 describes the '000 Patent as follows:

"A 360-degree camera device having [an] atmosphere lamp, comprising: (i) a supporting platform; (ii) a supporting spindle; (iii) a supporting base; and (iv) a rotating shooting bracket." *Id.* at ¶ 8. The supporting platform "comprises [of] a first supporting element, a tempered glass, a first light source, and a reflecting mirror." *Id.* "[T]he first supporting element is configured to support the tempered glass" and "the tempered glass is a single-sided perspective glass comprising a light transmitting surface and a reflecting surface." *Id.* There is also an "interval area disposed between the tempered glass and the reflecting mirror," with the "reflecting mirror and the reflecting surface [ ] oppositely disposed." *Id.* "[T]he first light source is disposed in the interval area." *Id.*

### iii.    U.S. Patent No. D976,993 (the "'993 Patent")

Plaintiff's final Patent is U.S. Patent No. D976,993 (the "'993 Patent"), which the USPTO granted to Plaintiff on January 31, 2023. *Id.* at ¶ 9. Defendants also dispute the presumed validity of the '993 Patent. ECF No. [199] at ¶ 9. Plaintiff's '993 Patent claims a "ornamental design for a

camera platform." ECF No. [187] at ¶ 10. The following illustrations are different views of the

ornamental design for the camera platform claimed in the '993 Patent:



FIG. 1



FIG. 2



FIG. 8

### B.  The Foreign Litigation with Kemeituo

"On May 27, 2022, Plaintiff sent a cease-and-desist letter" to the non-party Chinese company, Shenzhen Kemeituo Technology Co., Ltd. ("Kemeituo"), based on Kemeituo's sale of infringing 360-degree photo booths. *Id.* at ¶ 11. Specifically, the letter notified Kemeituo that the alleged infringement involved Plaintiff's '380 and '000 Patents. *Id.* Plaintiff subsequently filed a suit against Kemeituo in the Shenzhen Intermediate People's Court in China, which "found that Kemeituo had infringed on Plaintiff's patent rights, noting that [the] '[t]echnical analysis confirmed that the accused product f[ell] within the scope of the patented claims.'" *Id.* at ¶ 12.[3] Accordingly, the court ordered that "Kemeituo 'immediately cease manufacturing, offering for sale, and selling products infringing the Plaintiff's patent rights.'" *Id.*

While there is no dispute that the Shenzhen Intermediate People's Court issued this ruling on Plaintiff's patent rights, Defendants contend the "Shenzhen court ruling (Case No. (2023) Yue

---

[3] The Court's decision "followed the testimony of Kemeituo's representative confirming that Kemeituo purchased Plaintiff's products for Kemeituo's research and development, and that Kemeituo's product visually matched Plaintiff's products." ECF No. [187] at ¶ 12.

03 Min Chu 6852) was revoked on December 17, 2024, under Case No. (2024) Yue Zhi Min Zhong No. 1225, and involved the now-invalidated Chinese patent 202220876418.9, rendering the ruling irrelevant for the purposes of this case." ECF No. [199] at ¶ 12.

### C. The Accused Products

#### i. Alleged Infringement on the '380 Patent

Although Defendants operate independently of one another, they each sell "two distinct models of 360-degree photo booths [manufactured and] supplied by Kemeituo." ECF No. [187] at ¶ 13; ECF No. [199] at ¶ 32, ¶ 37. Plaintiff asserts that Defendant KMT-USA's "product infringes on, at least, claim 8 of the '380 Patent," as KMT-USA's product "contains each and every element of Claim 8 of the '380 Patent." *Id.* at ¶¶ 14-15. While Plaintiff acknowledges that the reinforcement frame in KMT-USA's infringing product is "more square-like" than the '380 Patent's frame, Plaintiff contends KMT-USA's "reinforcement frame is still 'stellar' shaped,'" and therefore "literally infringes" on Claim 8 of the '380 Patent. *Id.* at ¶ 16.

Defendants dispute that KMT-USA's products infringe on the '380 Patent, because Defendants claim the validity of the '380 Patent is in question. ECF No. [199] at ¶ 15. Moreover, Defendants maintain their products "are protected by Kemeituo's patents" and, in any event, "feature distinct elements, such as dynamic lighting control modules[,] a square-shaped vs. stellar-shaped reinforcement frame,] and single or dual LED strip configurations, not claimed in Plaintiff's patents." *Id.* at ¶ 13-14.

The parties also dispute whether KMT-USA's "more square-like reinforcement frame" is insubstantially different such that the KMT-USA's product infringes on claim 8 of the '380 Patent under the doctrine of equivalents. *See* ECF No. [187] at ¶ 17; ECF No. [199] at ¶ 17.

While Plaintiff asserts that Defendants Foncusun USA, 360Scope, MBOBAO-US, Froectry USA, and FEMOORER "sell the same or substantially the same products as Defendant KMT USA," ECF No. [187] at ¶ 18, Defendants maintain that "[e]ach Defendant's product differs in design (e.g., single vs. dual LED strips, square-shaped reinforcement frames). ECF No. [199] at 18.

### ii.    Alleged Infringement on the '000 Patent

Plaintiff asserts that Defendants are infringing on "at least [ ] claim 1 of the '000 Patent because Defendants' infringing products contain each and every element of claim 1 of the '000 Patent, either literally or under the doctrine of equivalents." ECF No. [187] at ¶ 19. Defendants respond that the validity of the '000 Patent is disputed, and Plaintiff fails to "account for Defendants' use of tempered glass with single-side film, not 'single-side perspective glass.'" ECF No. [199] at ¶ 19.

### iii.    Alleged Infringement on the '993 Patent

Plaintiff contends that Defendants' products are visually substantially similar to the '993 Patent and create "an overall appearance which an ordinary observer would perceive as nearly identical to the ornamental design covered by the '993 Patent." ECF No. [187] at ¶¶ 20-25. Defendants maintain the validity of the '993 Patent is disputed, and Defendants' products differ in design. ECF No. [199] at ¶¶ 20-25.

### iv.    Rights in the Products

Plaintiff asserts it has "rights in and to the inventions claimed in the '380 Patent and the '000 Patent, as well as the design claimed in the '993 Patent" which are all "prior in time to the rights claimed by Defendants." ECF No. [187] at ¶ 26. Moreover, Plaintiff claims "Kemeituo previously sought to establish prior rights in and to the design claimed in the '993 Patent," but the

Chinese courts rejected Kemeituo's claims. *Id.* at ¶ 27. Defendants dispute both of those assertions and maintain that, through Kemeituo, they "hold prior rights via U.S. Patent No. 11,920,729 B1 (filed August 9, 2023, granted March 5, 2024, with Chinese priority August 12, 2022) and U.S. Design Patents D1,046,947 S (granted October 15, 2024) and D978,951 S (granted February 21, 2023)." ECF No. [199] at ¶ 26.[4] As for Kemeituo's prior claims, Defendants contend that the case where those claims were raised, Case No. 24-CV-11487, "was voluntarily dismissed and does not constitute a rejection of Kemeituo's claims, as no ruling on the merits was issued." *Id.* at ¶ 27. Accordingly, Defendants assert that "Kemeituo's prior rights are supported by its patents (e.g., U.S. Patent No.11,920,729 B1) and sales records predating Plaintiff's priority dates." *Id.* Given their reliance on Kemeituo's patents, Defendants also contend they acted in good faith and that any alleged violation was not a willful infringement, nor has such infringement caused market confusion.

## III.   LEGAL STANDARD

### A.  Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c).[5] "A factual

---

[4] In Defendants' Statement of Additional Undisputed Facts, they assert that "Kemeituo began marketing and wholesaling its patented 360-degree photo booth products on 1688.com as early as March 4, 2022, predating Plaintiff's April 2022 priority dates." ECF No. [199] at ¶ 30.

[5] Federal Rule of Civil Procedure 56(c) states that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale,* 901 F.2d 989, 996 (11th Cir. 1990).

"'When the nonmoving party has the burden of proof at trial,' the party moving for summary judgment can proceed in one of two ways." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1173 (11th Cir. 2024) (quoting *Four Parcels of Real Prop.* 941 F.2d at 1437-38). The moving party may demonstrate "that there is an absence of evidence to support the non-moving party's

---

made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437-38). "If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Pizarro*, 111 F.4th at 1173. (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252. "If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment." *Pizarro*, 111 F.4th at 1173.

### B.  Patent Invalidity Under 35 U.S.C. § 102(b)

"Pursuant to 35 U.S.C. § 102(b)[,] a design is entitled to a patent unless it has been (1) described in a printed publication; (2) in public use; or (3) on sale more than one year prior to the date of the application of the patent." *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1221 (S.D. Fla. 2014). Once a patent is granted by the USPTO, it is entitled to a presumption of validity. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 643 (2015) (Under the Patent Act, and the case law before its passage, a patent is "presumed valid.") (citing 35 U.S.C. § 282(a)); *Mfg. Rsch. Corp. v. Graybar Elec. Co.*, 679 F.2d 1355, 1360 (11th Cir. 1982) ("Once a patent application survives the scrutiny of the Patent Office, it is presumed to be valid."). "Validity encompasses three 'separate tests of patentability': novelty, utility and non-obviousness." *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984) (quoting *United States v. Adams*, 383 U.S. 39, 48 (1966)). Consequently, "included within

the presumption of validity is a presumption of novelty, a presumption of nonobviousness and a presumption of utility[.]" *Id.* (citing *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567, 220 USPQ 97, 100 (Fed. Cir. 1983)).

Given the presumption of validity, "the burden of establishing patent invalidity as a defense [in an infringement suit] rests with the party challenging the patent." *Mfg. Rsch. Corp.*, 679 F.2d at 1360. This burden is "onerous" and requires the alleged infringer to "demonstrate the patent's invalidity by clear and convincing evidence." *Id.* Because the alleged infringer bears the burden of proving invalidity of the patent at trial, the "party seeking to have a patent held not invalid at summary judgment must show that the nonmoving party. . . failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

### C.  Patent Infringement

"A patent is infringed when a person 'without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1352 (S.D. Fla. 2016), *aff'd*, 708 F. App'x 998 (Fed. Cir. 2017) (quoting 35 U.S.C. § 271(a)). To prevail on an infringement claim, the patentee "must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally or under the doctrine of equivalents." *Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001). The patent infringement analysis involves a two-step inquiry. *See Metabolite Labs., Inc. v. Lab'ys Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004).

### i.      Step One—Claim Construction

"It is a bedrock principle of patent law that claims of a patent define the scope of a patented invention and the patentee's right to exclude." *Google LLC v. EcoFactor, Inc.*, 92 F. 4th 1049, 1054 (Fed. Cir. 2024). Therefore, to determine whether a patent has been infringed, the Court must first construe the meaning and scope of the patent claims asserted to be infringed. *See HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017) ("Claim construction is a question of law that may be based on underlying factual determinations"). In constructing claims, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and if in evidence, the prosecution history." *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426 (Fed. Cir. 1997) (quotation marks omitted). When looking at the language of the patent itself, words "are generally given their ordinary and customary meaning" that a "person of ordinary skill in the art in question at the time of the invention" would find it to have. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (quotation marks omitted).[6] "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.* at 1314.

"In many cases that give rise to litigation, however, determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a

---

[6] *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003) (explaining that claim terms "are examined through the viewing glass of a person skilled in the art").

field of art." *Id.* "Because the meaning of a claim term as understood by persons of skill in the art is often not readily apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of the skill in the art would have understood disputed claim language to mean." *Id.* (internal quotation marks omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (quotation marks omitted); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("a term can be defined only in a way that comports with the instrument as a whole").

There is a "heavy presumption in favor of the ordinary meaning of claim language." *Johnson Worldwise Ass'n, Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). "Claim terms cannot be narrowed by reference to the written description or prosecution history unless the language of the claims invites reference to those sources." *Id.* at 989-90. There are "two situations where a sufficient reason exists to require the entry of a definition of a claim term other than its ordinary and accustomed meaning." *Id.* at 990. "The first arises if the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term," and "[t]he second is where the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." *Id.* Moreover, the proper meaning of a term "can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at 1316.

### ii.    Step Two—Comparison of Products

"The second step is comparing the properly construed claims to the device accused of infringing." *Markman*, 52 F.3d at 976 (citations omitted). "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Dynacore Holdings Corp. v U.S. Philips Corp.*, 363 F. 3d 1263, 1273 (Fed. Cir. 2004). Literal infringement occurs where the infringer's product contains every element of at least one claim of the patent exactly. *See Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n. 1 (Fed. Cir. 1987). However, under the doctrine of equivalents, a patentee can still establish an infringement claim if the differences between the alleged infringer's product and the claim limitation are "insubstantial." *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1318-19 (Fed. Cir. 2000).

## IV.    DISCUSSION

### A.  Plaintiff's Arguments

Plaintiff asserts one claim of patent infringement against Defendants based on their alleged infringement of its '380, '000, and '993 Patents. According to Plaintiff, there is no genuine dispute that "Defendants' infringing products contain each and every element of, at least, claim 8 of the '380 Patent and Claim 1 of the '000 Patent, either literally or under the doctrine of equivalents," and that an ordinary observer would likely confuse the accused products with Plaintiff's '993 Patent. ECF No. [186] at 7.

### i.    Infringement on the '380 Patent

Plaintiff asserts that claim 8 of the '380 Patent encompasses "a high-stability 360-degree photo booth[,]" and there "is no genuine dispute that Defendants' products encompass such 360-degree photo booths. *Id.* at 8. Furthermore, Plaintiff argues there is no genuine dispute that

Defendants' photo booths consist of (1) "a 'supporting sage;'" (2) "a supporting cover plate and a reinforcement frame;" (3) "'a shock absorber' that 'is disposed between the supporting cover plate and the reinforcement frame'" (4) that Defendants' "reinforcement frame" is "stellar-shaped" and comprised of "a plurality of sub-frames connected with a main shaft;" and (5) "the shock absorber has a stellar shape corresponding to the reinforcement frame." *Id.* at 8-9. Accordingly, Plaintiff contends Defendants' products infringe on every element of claim 8 of its '380 Patent. Plaintiff acknowledges that Defendants' reinforcement frames are squarer shaped compared to the pentagonal-shaped reinforcement frames in Plaintiff's '380 Patent. However, Plaintiff maintains that this difference "is of no relevance" to the Court's infringement analysis because that aspect of the design is not an element of claim 8. Instead, Plaintiff insists that the Court "must focus on whether Defendants' infringing products meet the 'stellar shaped' element of claim 8 of the '380 Patent," and Plaintiff argues they do.

Plaintiff explains that the "plain and ordinary meaning of the term 'stellar'" simply means "of a star or stars." *Id.* at 11. Therefore, the reinforcement frame need only be "star" shaped. According to Plaintiff, stars need not have five perimetric sides and, therefore, an object may still be "stellar" even when it possesses only four perimetric sides. Plaintiff uses the figure below[7] to demonstrate that a star does not require five points:



Because Defendants' reinforcement frames can still be considered stellar-shaped even though they only have four points, Plaintiff contends the accused products literally infringe on the stellar-shaped element in claim 8 and, therefore, all the elements of claim 8 are satisfied.

---

[7] *See* ECF No. [186] at 11.

However, even if the shape of Defendants' reinforcement frame does not amount to a literal infringement, Plaintiff maintains that the square shape of the reinforcement frame does not render Defendants' products "insubstantially different" or otherwise "alter the structure, function, or operation of the claimed invention in any material way." *Id.* at 12. Consequently, Defendants' products still infringe on Plaintiff's '380 Patent under the doctrine of equivalents.

### ii.      Infringement on the '000 Patent

Plaintiff also contends there is no dispute Defendants' products infringe on claim 1 of the '000 Patent. Plaintiff asserts that "even a cursory review" of Defendants products show that their products infringe on all of the elements of claim 1 of the '000 Patent, as the products have a "360-degreee camera device" with an "atmosphere lamp" that is comprised of "(i) a supporting platform, (ii) a supporting spindle, (iii) a supporting base, and (iv) a rotating shooting bracket[.]" Additionally, Defendants' supporting platforms are comprised of "a first supporting element, a tempered glass, a first light source, and a reflecting mirror." *Id.* The first supporting element is also "configured to support the tempered glass" and the "tempered glass is a single-sided perspective glass comprising [of] a light-transmitting surface and a reflecting surface." *Id.* Furthermore, the products have "an interval area" that "is disposed between the tempered glass and the reflecting mirror," with the reflecting mirror and the reflecting surface oppositely disposed, and the first light source disposed in the internal area. *Id.*

Moreover, not only does the evidence reflect that Defendants' products infringe on both the '380 and '000 Patent, "[a]ll Defendants purchase the same products from Kemeituo, who was previously adjudicated as having infringed on the very applications to which Plaintiff's Patents

claim priority[.]"[8] *Id.* at 13. Consequently, Plaintiff insists that summary judgment on its infringement claim is proper.

### iii.    Infringement on the '993 Patent

Plaintiff argues that there is no dispute that Defendants have infringed on the '993 design patent "because 'in the eye of an ordinary observer' . . . the [Defendants' designs] 'are substantially the same' as that covered by the '993 Patent, and 'the resemblance is such as to deceive  [ ] an [ordinary] observer, inducing him to purchase one supposing it to be the other.'" ECF No. [186] at 13-14 (quoting *Volkswagen Group of America, Inc. v. Varona*, No. 19-CV24838, 2021 WL 247872, at *12 (S.D. Fla. Jan. 25, 2021) (internal citations and quotations omitted)).

Plaintiff contends that to determine whether a design patent has been infringed, the "Court need only conduct a side-by-side comparison of the design claimed in the '993 Patent and the designs of Defendants' infringing products to confirm that no reasonable jury would conclude otherwise." *Id.* at 14. Accordingly, Plaintiff offers the following comparisons for the Court's consideration.

| Defendants | Side-by-Side Comparison |
|---|---|
| **KMT-USA** |  |

---

[8] Plaintiff also argues that Defendants are infringing on Plaintiff's Patents in precisely the same way as Kemeituo did in those prior proceedings. ECF No. [186] at 13.

Case No. 23-cv-24366-BLOOM/Torres

| | |
|---|---|
| **Foncusun** | |
| **360Scope** | |
| **MBOBAO-US** | |



| | |
|---|---|
| **Froectry USA** |  |
| **FEMOORER** | |

According to Plaintiff, a review of the figure above shows that Defendants' products encompass Plaintiff's '993 Patent design "substantially if not completely[.]" *Id.* at 15. Because any differences between the designs are minor, and minor differences will not prevent a finding of infringement, Plaintiff argues that summary judgment based on the infringement of its '993 Patent is proper. *Id.* at 16.

### iv.     Validity of the Patents

Lastly, Plaintiff argues that summary judgment cannot be denied based on the purported invalidity of its patents. Although Defendants argue that Plaintiff's Patents are invalid, Plaintiff contends "Defendants have presented no admissible evidence—or likely to be admissible evidence—to meet their burden" for proving that Plaintiff's patents are invalid. *Id.* at 16.

### B. Defendants' Arguments

Defendants contend that Plaintiff's infringement claim fails because Plaintiff's Patents are invalid due to the existence of prior art or the legal invalidation of their Chinese priority patents. ECF No. [198] at 3. Defendants argue that the '380 Patent claiming priority to Chinese Patent Application 202220876418.9, and the '993 Chinese priority patent, 202230229473.4, were both invalidated by Chinese courts, casting doubt on the validity of the U.S. patents.

Additionally, Defendants assert that all three of Plaintiff's Patents have been invalidated by prior art. For the '380 Patent, Defendants point to an October 15, 2019 video uploaded to YouTube, which purportedly "demonstrates 360-degree photo booth technology predating the priority date." *Id.* at 4. Defendants also claim that as of March 4, 2022, Kemeituo was distributing similar products to the '380 Patent on 1688.com. Given this evidence, Defendants maintain that the '380 Patent is not only non-novel and obvious but invalid by anticipation. *Id.* Regarding the '000 Patent and the '993 Patent, Defendants claim U.S. Design Patent No. D958,222, the 2019 YouTube video, and Kemeituo's March 4, 2022 sales demonstrate proof of prior art and show "that the claimed invention lacks novelty." *Id.* at 4.

Defendants argue, alternatively, that even if Plaintiff's Patents are valid, Defendants' products do not infringe on the patents, as the allegedly infringing products lack critical claim elements. ECF No. [198] at 5. Defendants address the purported differences between their products and each of Plaintiff's Patents in turn.

### i. Non-infringement of the '380 Patent

Defendants argue that Claim 8 of the '380 Patent requires a 'stellar-shaped' reinforcement frame and shock absorber." *Id.* at 5. However, "Defendants' products use square-shaped reinforcement frames and shock absorbers." *Id.* While Plaintiff contends that Defendants' square-

shaped frame and the patented stellar-shaped frame are equivalents, Defendants argue that Plaintiffs have failed to provide "evidence of functional interchangeability" between the designs. *Id.*

### ii.    Non-infringement on the '000 Patent

As for the '000 Patent, Defendants point out that the "Patent requires 'single-sided perspective glass," but Defendants' products "use tempered glass with single-sided film." *Id.* at 6. Defendants claim their products are also distinguishable from the '000 Patent because the Defendants' products have different "lighting configurations (single or dual LED strips). *Id.*

### iii.    Non-infringement of the '993 Patent

Finally, with respect to the '993 Patent, Defendants assert that the claim relates to "an ornamental design with a stellar-shaped reinforcement frame and specific connection parts." *Id.* As previously mentioned, "Defendants' [contend their] products use square-shaped frames and lack the claimed connection parts, rendering them visually distinct to an ordinary observer." *Id.*

Defendants also argue that Plaintiff's comparisons between all three Patents and Defendants' products are also based "on incomplete promotional renderings, not actual products," and thus Plaintiff fails to establish substantial similarity.

### C.  Validity of Plaintiff's Patents

Before the Court conducts its infringement analysis, it must first determine whether there is a genuine dispute as to the validity of any of Plaintiff's Patents. A party may assert invalidity on several grounds, including anticipation, obviousness, and indefiniteness. *See* 35 U.S.C. §§ 102, 103, 112. *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1357 (S.D. Fla. 2016), *aff'd*, 708 F.

App'x 998 (Fed. Cir. 2017)). Defendants primarily rely on a theory of anticipation to invalidate the Patents.[9] A patent will be considered "anticipated" under 35 U.S.C. § 102 if:

> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

*Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (quoting 35 U.S.C. § 102). However, "[a] claim is anticipated [only] if each and every element as set forth in the claim is found, either expressly or inherently, in a single prior art reference." *Arbutus Biopharma Corp. v. ModernaTX, Inc.*, 65 F.4th 656, 662 (Fed. Cir. 2023) (citing *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002)); *see also Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003) ("[A] prior art reference which expressly or inherently contains each and every limitation of the claimed subject matter anticipates and invalidates.").

A patent may be rendered invalid under a theory of anticipation by public use if "the invention was . . . in public use . . . in this country, more than one year prior to the date of the application for patent in the United States." *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371, 1377 (Fed. Cir. 2023) (citing Pre-AIA 35 U.S.C. § 102(b)). "The public use bar is triggered 'where, before the critical date, the invention is [(1)] in public use and [(2)] ready for patenting." *Polara Eng'g Inc. v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018) (citing *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005)). A product is deemed "in public use"

---

[9] "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) (citing *General Elec. Co. v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353, 50 USPQ2d 1910, 1912 (Fed. Cir. 1999)).

if the invention was "accessible to the public or [otherwise] commercially exploited" by the inventor. *Delano Farms Co. v. California Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015).

Regarding the second element, "ready for patenting," a party may satisfy this element by showing either (1) the claimant was in possession of the subject matter and it "was shown or known to work for its intended purpose;" or (2) "by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 855 F.3d 1356, 1372 (Fed. Cir. 2017); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998).

Defendants argue there is sufficiently clear and convincing evidence of anticipation to create a genuine dispute as to the validity of Plaintiff's Patents. *See* ECF No. [198] at 3. The primary evidence Defendants rely upon are: (1) YouTube videos purportedly demonstrating the widespread existence and manufacturing of 360 photo booths by various entities prior to Plaintiff's patent priority date,[10] (2) two patent invalidation decisions from the Chinese National Intellectual Property Administration ("CNIPA"),[11] and (3) "Kemeituo's wholesale distribution of similar products on 1688.com." *Id*. Plaintiff maintains the YouTube videos and the CNIPA decisions were not produced by Defendants during discovery and therefore may not be relied upon to oppose Plaintiff's Motion for Summary Judgment. *See* ECF Nos. [203] at 5; [212] at 2.[12] Accordingly,

---

[10] While the following video from October 15, 2019 (https://www.youtube.com/watch?v=SXhlfWOl0_Y) was the only video Defendants referenced in their Response brief, see ECF No. [198], Defendants cite to multiple other videos in ECF No. [199-10].

[11] *See* ECF No. [199-4] and ECF No. [199-5].

[12] Plaintiff does not specifically identify whether both CNIPA decisions or just the October 9, 2024 decision were not timely produced during discovery.

before the Court may determine whether there is a genuine dispute, the Court must decide what evidence may be considered on summary judgment.

Rule 26 of the Federal Rules of Civil Procedure governs discovery and the parties' obligations of disclosure to one another. "Rule 26(a) provides, in relevant part, that 'a party must, without a discovery request, provide to the other parties . . . a copy or a description by category and location of all documents . . . that the disclosing party has in its possession . . . and may use to support its claims . . ..'" *Berryman-Dages v. City of Gainesville Fla.*, No. 1:10CV177-MP-GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012) (quoting Fed. R. Civ. P. 26(a)(1)(A)(ii)); *see also Jean-Baptistes v. City of Miami*, Case No. 1:23-cv-22670, 2025 WL 360817, at *2 (S.D. Fla. Jan. 3, 2025) ("'Use' includes any use at a pretrial conference, to support a motion, or at trial.") (quoting *Higgs v. Costa Crociere S.P.A. Co.*, No. 15-60280-CIV, 2019 WL 8370792, at *10 (S.D. Fla. 2019)). While the parties must make their initial disclosures within fourteen days after their Rule 26(f) conference, the parties have a continuing obligation to "supplement or correct [their] disclosure or response . . . in a timely manner if [a] party learns that in some material respect the disclosure . . . is incomplete." Fed. R. Civ. P. 26(e)(1).

To "prevent unfair prejudice" and ensure the "integrity of the discovery process," Rule 37 of the Federal Rules of Civil Procedure "gives a district court discretion to address a litigant's failure to make a required disclosure timely." *Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 685 (N.D. Fla. 2020) (citing *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019)); *Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374 (11th Cir. 1999). Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless." Fed. R. Civ. P. 37(c)(1); *see*

*also Doherty-Heinze v. Chrisley*, Civ. Act. No. 3:21-cv-105-TCB, 2023 WL 8351550 at *2 (N.D. Ga. Oct. 12, 2023) (refusing to consider evidence that was not properly turned over during discovery); *see Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003) ("For this Court to consider Defendants' new evidence of non-infringement, Defendants must show either substantial justification for failing to disclose this evidence during discovery or that the failure is harmless."). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x. 821, 824 (11th Cir. 2009).

When deciding whether the failure to timely disclose was justified or harmless, courts should "consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 Fed. App'x. 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)). "Where the reason for the failure and the prejudice to the opposing party weigh against justification or harmlessness, exclusion may be necessary even if the [record evidence or] testimony is important." *Jean-Baptiste*, 2025 WL 360817, at *2 (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)).[13] The determination of whether a Rule 26 violation is substantially justified or harmless, however, is ultimately subject to the district court's sound discretion. *See, e.g.*, *Clingman & Hanger Mgmt. Assocs., LLC v. Knobel*, No. 16-62028-CIV, 2018 WL 2694594, at *2 (S.D. Fla. Apr. 19, 2018) ("The district court has broad discretion in deciding whether the failure to disclose evidence is substantially justified or harmless under Rule 37(c)(1)").

---

[13] However, "[f]ailing to comply with the court's order need not be willful or in bad faith unless the court 'imposes the most severe sanctions—default or dismissal.'" *Lincoln Mem'l Acad. v. Fla.*, No. 8:20-CV-309-T-36AAS, 2020 WL 7396978, at *2 (M.D. Fla. Dec. 17, 2020) (quoting *Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300, 1319 (11th Cir. 2014)).

Case No. 23-cv-24366-BLOOM/Torres

Here, there is no genuine dispute that Defendants failed to timely disclose either the October 9, 2024 CNIPA decision or the YouTube videos before the close of discovery. Defendants concede that the YouTube videos were never produced in discovery. *See* ECF No. [209] at 3. As for the CNIPA decision, Defendants acknowledge that the "Chinese invalidation decision for Patent Application No. 202220876418.9 (ECF No. 199-4) was issued on October 9, 2024," but maintain that "discovery closed on September 30, 2024." *Id.* However, Defendants plainly misstate the record. While the decision may have been formally issued on October 9, 2024, discovery in this case did not close until February 12, 2025. *See* ECF No. [169]. Consequently, since discovery did not close in this case until well after the Chinese court's decision was issued, the decision should have been produced in discovery if Defendants wished to rely on the evidence at summary judgment and eventually at trial.

Notwithstanding the untimely disclosure, Defendants contend their failure to produce the evidence in question was either substantially justified or harmless. Defendants argue that since Plaintiff was a party to the Chinese proceedings, Plaintiff was on adequate notice of the evidence. *See* ECF No. [209] at 3. Moreover, even if Plaintiff believed it needed more information about Defendants' intended use of the Chinese proceedings, Defendants argue that Plaintiff could have simply "sought supplemental discovery." *Id.*

Defendants further contend that Plaintiff was not harmed by their failure to turn over the YouTube videos in discovery because Plaintiff was on notice of prior art sales and videos because of Defendants' "earlier motion to dissolve the preliminary injunction (ECF No. 67)" and Defendants' reference to YouTube videos in subsequent opposition filings. ECF No. [209] at 3.

Since Defendants fail to offer any substantial justification for the untimely disclosures, the focus of the Court's Rule 37 analysis is whether the failure to disclose was harmless. "A failure to

make the required disclosure is harmless where there is no prejudice to the party entitled to receive the disclosure." *Garcia v. Delta Air Lines*, No. 17-23807-CIV, 2019 WL 201255, at *2 (S.D. Fla. Jan. 15, 2019) (citing *S.O.S. Resource Services, Inc. v. Bowers*, Case No. 14-Civ-22789, 2015 WL 6735540, at *1 (S.D. Fla. Nov. 4, 2015)). Here, Plaintiff has plainly suffered prejudice as a result of not receiving the YouTube videos during discovery. The existence of the videos is critical evidence that arguably demonstrates that prior art existed well before Plaintiff filed its patent applications with the USPTO. Accordingly, by failing to turn over the videos in discovery despite being aware of the videos' existence,[14] Defendants inhibited Plaintiff's ability to evaluate and rebut the evidence in the instant Motion.[15]

The failure to disclose any of the YouTube videos during discovery is a particularly acute problem given the authenticity concerns raised by Plaintiff. *See* ECF No. [203] at 5.[16] Plaintiff argues that Defendants have failed to authenticate these YouTube videos and that simply providing a link to the videos in their opposition briefs is insufficient. *See* ECF No. [203] at 5. Defendants' only argument in response is that their YouTube videos are capable of being authenticated via witnesses with personal knowledge or through self-authentication certifications under Rule 902(11). ECF No. [209] at 3. However, both theories of authentication are insufficient here, even

---

[14] *See Garcia v. Delta Air Lines*, No. 17-23807-CIV, 2019 WL 201255, at *2 (S.D. Fla. Jan. 15, 2019) ("The purpose behind Rule 37 is 'to prevent the sandbagging of an opposing party with new evidence.'") (quoting *King v. Cessna Aircraft Co.*, Case No. 03-20482, 2010 WL 11505695, at *1 (S.D. Fla. May 7, 2010)).

[15] While Plaintiff might have theoretically been aware of the videos as a result of Defendants' prior opposition filings, the fact that Defendants did not turn over such important evidence during discovery would reasonably indicate to Plaintiff that Defendants no longer intended to rely on such evidence to defend their case, and as such, Plaintiff need not investigate and prepare to defend against those videos during the remainder of the litigation.

[16] *See Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, [the Court] may consider only that evidence which can be reduced to an admissible form.").

at the summary judgment stage. First, the YouTube videos are not yet self-authenticating under Rule 902(11) because Defendants have not proffered the certificate of a YouTube custodian verifying the videos' authenticity. *See Saraceni v. MerchSource, LLC*, No. CV 21-4947, 2022 WL 283104, at *4 (E.D. Pa. Jan. 31, 2022) ("'YouTube videos are self-authenticating' only 'if the party offering the video provides certification by the custodian of the records' that the videos constitute records of a regularly conducted activity.") (internal quotations omitted). While evidence need only *be capable* of authentication at the summary judgment stage,[17] even if Defendants eventually obtained a certification from a custodian of record and otherwise satisfied the remaining Rule 902(11) requirements, all a certification would establish under the circumstances is that the videos were indeed uploaded to YouTube on a particular date. Any certification would not authenticate that the videos were unaltered originals or that the videos captured an already existing product. *See United States v. Hunt*, 534 F. Supp. 3d 233, 254 (E.D.N.Y. 2021) (explaining that where the authenticity of the content of the record is at issue, "a certification by a custodian in itself cannot be sufficient for purposes of authentication because, as already described, such a certification serves a limited role: it simply shows that a record was made at or near a certain time, that the record was kept in the course of a regularly conducted business activity, and that the making of the record was a regular practice of that activity"). Critically, the certification would not establish that the substance and *content* of the video is what it purports to be.[18] Accordingly, the Court would not be capable of considering the evidence for its intended purpose on summary judgment.

Furthermore, despite Plaintiff's challenge, Defendants fail to point to any witnesses capable of authenticating the content of the videos. *See McHale v. Crown Equipment Corp.*, No.

---

[17] *See Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021).

[18] Evidence incapable of being authenticated or reduced to its admissible form cannot be considered on summary judgment. *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1304 (11th Cir. 2022).

21-14005, 2022 WL 4350702 (11th Cir. Sept. 20, 2022) (finding that the trial court did not abuse

its discretion in excluding YouTube video evidence, where there was "no evidence of when the

video was originally recorded, what device made the recording, or any witness testimony to the

accuracy of the [event] or whether the video had been altered" because "[a]ll we know is that the

video was pulled from YouTube"). Simply asserting that a witness theoretically could authenticate

the videos is insufficient when authenticity is challenged at the summary judgment stage. *See*

*Doherty-Heinze v. Chrisley*, Civ. Act. No. 3:21-cv-105-TCB, 2023 WL 8351550, at *3 (N.D. Ga.

Oct. 12, 2023) (finding party had not demonstrated that audio recording was capable of being

reduced to admissible form where "he put forward no evidence regarding the origin of the

recording, what type of equipment was used to make the recording, whether it has been altered, or

who the speakers are" even after he had an opportunity to do so in a reply brief); *Snover v. City of*

*Starke, Fla.*, 398 F. App'x 445, 449 (11th Cir. 2010) ("Because the defendants merely filed the

DVD with the court and did not authenticate it, the district court did not abuse its discretion in

declining to consider the DVD.").

Because Defendants provide no justification for the untimely disclosure, there are critical

issues of authentication, and Plaintiff has been unduly prejudiced by its inability to properly

consider the YouTube videos during discovery and prior to summary judgment, Defendants may

not rely on the videos in defense of the instant Motion. *See In re Disposable Contact Lens Antitrust*,

329 F.R.D. 336, 382 (M.D. Fla. 2018) ("The main purpose underlying the sanctions in Rule

37(c)(1) is to prevent surprise and prejudice to the opposing party.") (quoting *Whetstone Candy*

*Co. v. Nestle USA, Inc.*, No. 3:01-cv-415-J-25HTS, 2003 WL 25686830, at *3 (M.D. Fla. June 2,

2003); *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003)

("Rule 37 is designed to be a strong incentive for parties to disclose information they will use as

evidence at trial, at a hearing, or on a motion."), *aff'd sub nom. Go Med. Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264 (Fed. Cir. 2006); *see also Stallworth v. E–Z Serve Convenience Stores*, 199 F.R.D. 366, 369 (M.D. Ala. 2001) (finding harm to party in having to respond to new material at late stage in action).

The Court also finds Defendants' failure to timely disclose their intent to rely on the October 9, 2024 CNIPA decision was not harmless. *See Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014) (holding that a tardy disclosure was not harmless when it "was made after the agreed-upon [ ] disclosure date, after discovery was closed, [and] after Appellee filed a motion for summary judgment"). Although Plaintiff may have been a party to the Chinese proceedings and aware of the circumstances surrounding that litigation, Plaintiff was unaware of how Defendants intended to use the litigation and evidence from those proceedings to undermine the validity of Plaintiff's Patents in the instant case. It would be unreasonable to assume that Plaintiff would expect Defendants to rely on proceedings simply because Plaintiff may have been a participant. Defendants' failure to disclose their reliance on the Chinese proceedings during discovery logically suggested to Plaintiffs that Defendants would not rely on the proceedings or evidence utilized during those proceedings. *Cf. Hackler v. General Motors LLC*, 2022 WL 16951664, at *3 (S.D. Ga. Nov. 15, 2022).

However, even if the failure to disclose evidence of the Chinese proceedings in discovery was harmless, the Court finds that neither CNIPA decision establishes a genuine issue of material fact as to the validity of Plaintiff's Patents. While Defendants argue that the purported finding of invalidity by a Chinese court calls into question the validity of Plaintiff's U.S. Patents, "[p]atent law [ ] is territorial" and therefore the decision of a foreign jurisdiction on the validity of a patent does not undermine the patent's validity in the United States. *Halo Createive & Design Ltd. v.*

*Comptoir Des Indes Inc.*, 816 F.3d 1366, 1371 n.4 (Fed. Cir. 2016) (citing *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 455 (2007) ("The traditional understanding that our patent law operates only domestically and does not extend to foreign activities is embedded in the Patent Act itself.")); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531 (1972) ("Our patent system makes no claim to extraterritorial effect"; our legislation "do[es] not, and [was] not intended to, operate beyond the limits of the United States, and *we correspondingly reject the claims of others to such control over our markets*.") (emphasis added) (quoting *Brown v. Duchesne*, 19 How., at 195, 15 L. Ed. 595 (1856); citing *Boesch v. Graff*, 133 U.S. 697, 703, 10 S. Ct. 378, 380, 33 L. Ed. 787 (1890)). While evidence provided in foreign proceedings may be cautiously considered when determining the validity of a patent, the judgments themselves carry no weight, given that the standard for evaluating patents is different across jurisdictions. *Cf. Heidelberger Druckmaschinen AG v. Hantscho Com. Prods., Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994) ("Caution is required when applying the action of a foreign patent examiner to deciding whether the requirements of 35 U.S.C. § 103 are met under United States law, for international uniformity in theory and practice has not been achieved."); *Lead Creation Inc. v. Hangzhou Yueji E-Com. Co.*, No. 22-CV-10377 (JMF), 2023 WL 2403678, at *1 (S.D.N.Y. Mar. 8, 2023) ("[I]t is true that the decisions of foreign courts and patent offices are not binding on this Court[.]"). Defendants attempt to rely entirely on the decisions from a Chinese court to challenge the validity of Plaintiff's Patents without directing this Court to any evidence or reasoning in those decisions that would support invalidating the U.S. Patents at issue here. *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2014 WL 835785, at *1 (S.D. Fla. Mar. 4, 2014) ("[I]t is not a court's role to hunt through the record to uncover evidence that supports one party or the other.") (citing *Chavez v. Sec'y Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("judges are not required to ferret out delectable facts buried in a massive

record, like the one in this case")). Because Defendants merely attempt to rely on the outcome of the CNIPA decisions, and not the facts, reasoning, or evidence underlying those foreign court decisions, the Court finds that the evidence does not raise a genuine question as to the validity of Plaintiff's U.S. Patents.

Defendants' remaining evidence of invalidity also fails to establish a genuine dispute of material fact. Defendants next point to Kemeituo's alleged distribution of "similar products on 1688.com" as proof of the invalidity of Plaintiff's Patents. ECF No. [198] at 4-5. However, there are several problems with this evidence. First, to establish an anticipation defense, a defendant must show that "each and every element as set forth in the claim is found, either expressly or inherently, in a single prior art reference." *Arbutus Biopharma Corp.*, 65 F.4th at 662. Here, Defendants fail to explain how the products sold by Kemeituo satisfied *each and every element* of *any* of the patent claims. Defendants simply assert in a conclusory fashion that "Kemeituo's wholesale distribution of similar products on 1688.com by March 4, 2022, further establishes anticipation under 35 U.S.C. § 102," without any discussion of the individual elements of the claims. ECF No. [198] at 4.[19] *See 01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) ("[A]n accused infringer cannot defeat a claim of literal infringement or establish invalidity merely by pointing to similarities between an accused product and the prior art.").

More importantly, Plaintiff's '380 Patent was filed on October 28, 2022, its '000 Patent was filed on January 19, 2023, and its '993 Patent was filed on August 1, 2022. *See* ECF No. [191] at 49, 52; ECF No. [8-3] at 2. Defendants acknowledge that the Kemeituo products in question

---

[19] The only other reference Defendants make to the Kemeituo sales is their assertion that Kemeituo's sales on 1688.com by March 4, 2022, . . . establish[es] anticipation." ECF No. [198] at 5.

were not publicly available until March 2022. *See id.* at 5. While Kemeituo's products became available before all three of the Patents' filing date, under § 102(b), evidence of prior commercial distribution or public use is only relevant if those prior sales or distributions occurred more than one year before *the filing* of the subject patent, i.e., the "critical date."[20] *See* 35 U.S.C. § 102(b); *Crown Packaging Tech., Inc. v. Belvac Prod. Mach., Inc.*, 122 F.4th 919, 924 (Fed. Cir. 2024) (explaining the on-sale bar only applies if the invention is offered for sale "before the critical date"); *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1323 (Fed. Cir. 2002) ("The on-sale bar applies when the invention is the subject of a commercial offer for sale, and is ready for patenting before the critical date."); *Sparton Corp., v. United States*, 57 Fed. Cl. 455, 457 (2003), *rev'd and rem'd on other ground*, ("[F]or Defendant to prevail, it must show that the patented inventions were on sale prior to the critical date."). Since the critical dates for all three of Plaintiff's Patents fall before the March 2022 Kemeituo distribution date, the evidence of Kemeituo's prior sales has no bearing on the validity of Plaintiff's Patents.[21]

The only other evidence Defendants rely upon to prove invalidity of Plaintiff's Patents is Chengdu Tops Technology Co., Ltd.'s U.S. Design Patent No. D958,222 ("D958,222 Patent"). *See* ECF No. [199-8].[22] According to Defendants, this design patent predates the "priority date" of both the '000 Patent and the '993 Patent and therefore establishes that Plaintiff's claimed

---

[20] *See Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1327 (Fed. Cir. 2001) ("Section 102(b) provides: 'A person shall be entitled to a patent unless . . . the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.' 35 U.S.C. § 102(b). The date exactly one year prior to the date of application for the patent is known as the critical date.").

[21] While Defendants seem to focus on the alleged "priority dates" of Plaintiff's Patents, *see* ECF No. [198] at 4-5, the appropriate inquiry when analyzing whether prior sales invalidate a patent is the critical date, which is based on the date the patent application was filed.

[22] Chengdu Tops Technology Co., Ltd is not a party to this action; it is merely the owner of the D958,222 Patent.

inventions in its '000 Patent and the '993 Patent lack novelty. However, Defendants fail to explain how the D958,222 Patent anticipated the claim elements of the '000 Patent or the design of '993 Patent, and the Court will not do Defendants' work for them. "Establishing that a prior art reference discloses each and every claim element and limitation is not merely a perfunctory exercise. Rather, it is an integral part of [Defendants'] 'very heavy burden' to provide clear and convincing evidence of invalidity by anticipation." *Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, No. 8:12-CV-691-T-24-MAP, 2014 WL 4545857, at *5 (M.D. Fla. Sept. 12, 2014); *Koito Mfg. Co. v. Turn–Key–Tech, LLC*, 381 F.3d 1142, 1151 (Fed. Cir. 2004). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir. 1990)). "[T]he onus is upon the parties to formulate arguments[.]" *Id.* (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (additional level of citations omitted)); *see also Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-CV-921-CEM-GJK, 2021 WL 9595511, at *11 (M.D. Fla. July 28, 2021) (citing *Watkins v. Goodyear Pension Plan*, No. 4:17-cv-461-VEH, 2018 WL 1964591, (N.D. Ala. Apr. 26, 2018) (explaining that courts "will not address [ ] perfunctory and underdeveloped argument[s] and "[t]he Court will [also] not fill in the gaps for [the parties]," because "under the adversary system the Court does not serve as counsel's law clerk") (quotation omitted)). Accordingly, because Defendants fail to make any argument explaining how the D958,222 Patent satisfies the requirements for prior art, the Court finds the evidence fails to establish a genuine issue of material facts as to the Plaintiff's Patents' validity.[23]

---

[23] To the extent Defendants assert a challenge as to the obviousness of Plaintiff's Patents that is separate and apart from their anticipation challenge, Defendants fail to identify the independent legal standard that they must satisfy to prove obviousness. Instead, Defendants merely contend in a conclusory manner that the evidence they rely upon demonstrates that Plaintiff's invention was obvious. This is insufficient to carry

Therefore, because Defendants offer no other admissible evidence of invalidity, they have failed to provide sufficient admissible evidence to create a genuine dispute of fact as to the validity of Plaintiff's Patents. Consequently, the Court will proceed to the infringement analysis.

### D.  Claim Construction

The first step of any infringement analysis is to construe Plaintiff's claims under the Patents. However, the Court need only construe the meaning and scope of a patent claim where "the parties raise an actual dispute regarding the proper scope of t[he] claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996)). Where there is no challenge to the meaning of the terms, the Court may simply apply the "widely accepted meaning of commonly understood words." *Id.* (quoting *Phillips*, 415 F.3d at 1314). Here, the parties agree as to the scope and the meaning of each of the claims. *See* ECF No. [198] at ¶¶ 4, 8, 10.  As such, there is no need for the Court to engage in any claim construction and may simply apply the terms of the claims as they are commonly understood.[24]

### E.  Infringement For Utility Patents

#### i.    Literal Infringement

A finding of literal infringement requires the patent owner to establish that "every limitation set forth in a claim must be found in an accused product, *exactly*." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) (emphasis added). "[I]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."

---

their burden at the summary judgment stage.

[24] While there is a dispute as to whether Defendants' products' reinforcement frames are "stellar" in shape, the parties agree the plain and ordinary meaning of the term "stellar" means "star-like" or "of a star." *See* ECF No. [186] at 11; ECF No. [209] at 5. Accordingly, there is no need for the Court to engage in claim construction before proceeding with the infringement analysis.

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010)

(quotation marks omitted).

### a. '380 Patent

As previously stated, Plaintiff contends that Defendants' products infringe on claim 8 of

the '380 Patent because Defendants' products encompass "a high-stability 360-degree photo

booth, comprising (i) a supporting stage, (ii) wherein the supporting stage comprises a supporting

cover plate and a reinforcement frame, (iii) and a shock absorber is disposed between the

supporting cover plate and the reinforcement frame, (iv) wherein the reinforcement frame

comprises a plurality of sub-frames connected with a main shaft and the reinforcement frame is

stellar shaped, and the shock absorber has a stellar shape corresponding to the reinforcement

frame." ECF No. [186] at 4. Defendants concede that their products possess all the claimed

infringing features except that their products do not possess a reinforcement frame or shock

absorber that is "stellar shaped." ECF No. [198] at 5. Defendants argue that their products utilize

square reinforcement frames and shock absorbers as depicted below,[25] and therefore their products

do not literally infringe on the '380 Patent:





---

[25] *See* ECF No. [199-2] at 2; ECF No. [187] at 6 (citing ECF No. [187-7], [187-8]; ECF No. [8-1]).

Plaintiff insists that the plain and ordinary meaning of the term '"stellar' encompasses both four-sided and five-sided reinforcement frames and shock absorbers and therefore Defendants' reinforcement frame and shock absorber may still be considered stellar. When looking at Defendants' reinforcement frames, it is plainly evident that the frames are not "stellar" but rather square-shaped. Even assuming Plaintiff's argument has merit, Defendants have at least raised a genuine issue of fact as to whether their products literally infringe on Plaintiff's '380 Patent given the shape of the reinforcement frame and accompanying shock absorber. Because a reasonable jury could find that the frame is not stellar-shaped, summary judgment cannot be granted based on a theory of literal infringement of the '380 Patent.

### b. '000 Patent

Turning next to the '000 Patent, Plaintiff contends that Defendants' products literally infringe on claim 1 of the '000 Patent because Defendants' products

> encompass[ ] a 360-degree camera device having atmosphere lamp, comprising (i) a supporting platform, (ii) a supporting spindle, (iii) a supporting base, and (iv) a rotating shooting bracket wherein the supporting platform comprises a first supporting element, a tempered glass, a first light source, and a reflecting mirror, the first supporting element is configured to support the tempered glass, the tempered glass is a single-sided perspective glass comprising a light-transmitting surface and a reflecting surface, an interval area is disposed between the tempered glass and the reflecting mirror, the reflecting mirror and the reflecting surface are oppositely disposed, and the first light source is disposed in the interval area.

ECF No. [186] at 5. Defendants contend Plaintiff has failed to prove they literally infringed on all the elements of claim 1 of the '000 Patent because the claim requires the product to have a "single-sided perspective glass," while Defendants utilize "glass with single-sided film." ECF No. [198] at 6. Furthermore, although Defendants do not point to a particular element, they argue that their products are further differentiated from the '000 Patent because their products come with LED strips.

The Court finds that Plaintiff has failed to establish literal infringement of its '000 Patent. As the Court has already made clear, any differences between a patent's claim element and the corresponding element of the alleged infringing product precludes summary judgment under a theory of literal infringement. *See Bristol-Myers Squibb Co. v. Andrx Pharms., Inc.*, 343 F. Supp. 2d 1124, 1134 (S.D. Fla. 2004) ("In order for a product to literally infringe a patent claim, the patentee must prove by a preponderance of the evidence that the accused product includes elements that are literally identical to each and every limitation of the patent claim.") (citing *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302 (Fed. Cir. 2001); *Abbey v. Bill Ussery Motors, Inc.*, 74 F. Supp. 2d 1217, 1221 (S.D. Fla. 1999), *aff'd sub nom. Abbey v. Robert Bosch GMBH*, 217 F.3d 853 (Fed. Cir. 1999)). Here, claim 1 of the '000 Patent specifically requires the use of perspective glass. In ECF No. [187-9], Plaintiff admits in no uncertain terms that Defendants' products do not have the single-sided perspective tempered glass described in the Patent. *See* ECF No. [187-9]. Accordingly, because Plaintiff concedes that not every element of claim 1 has been precisely satisfied, Plaintiff cannot establish as a matter of law that Defendants infringed on the '000 Patent under a theory of literal infringement.[26]

### ii.      Doctrine of Equivalents

Even when there is no literal infringement, infringement may occur under the doctrine of equivalents ("DOE"). "The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prods., Inc. v. Devon Inds., Inc.*, 126 F.3d 1420, 1424 (Fed.

---

[26] Because the Court finds that there is no literal infringement based on the absence of the perspective glass alone, the Court need not consider whether the LED lights on Defendants' products precludes a finding of literal infringement on the '000 Patent.

Cir. 1997) (citations omitted). "At the same time, the doctrine of equivalents necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public-notice function of patent claims and risks deterring non-infringing and potentially innovative endeavors." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citation omitted). "In recognition of this risk, and in an effort to strike the proper balance between protecting patentees while also providing sufficient notice to the public, various rules of law have emerged to constrain when and how the doctrine of equivalents is to be applied." *Id.*

For the doctrine of equivalents to apply, there must be "'equivalence' between the elements of the accused product or process and the claimed elements of the patent invention." *Warner-Jenkinson Co. v. Hilton Davis Chem.* Co., 520 U.S. 17, 21 (1997). "Under the doctrine of equivalents, we examine each element of the claim to determine whether the allegedly infringing device meets that requirement or has some alternative feature that is equivalent to the unmet requirement." *MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 848 (11th Cir. 2013) (citing *Warner–Jenkinson*, 520 U.S. at 29). "One way to evaluate substantial equivalence is to consider whether the element performs substantially the same function in substantially the same way to produce substantially the same result." *Id.* (citation omitted). "Even if this test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art." *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) (citations omitted).

Notwithstanding the fact that there is no literal infringement of either the '380 or '000 Patents, the Court finds that Plaintiff has shown there is no genuine dispute that Defendants' products infringed on both of Plaintiff's utility patents under the doctrine of equivalents. As noted above, the only difference between claim 8 of the '380 Patent and the Defendants' products is the

shape of the reinforcement frame and shock absorber. However, the differences in shape do not render the '380 Patent and Defendants' products substantially different. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1321 (Fed. Cir. 1998) (explaining that to avoid liability under the doctrine of equivalents, the difference between the claim element and the infringing product must be "substantial"). The reinforcement frame and the shock absorber serve the exact same purpose—they ensure "a stable, anti-shake platform for consistent image quality." ECF No. [187-8]; ECF No. [191] at 66-82. Defendants do not contend that the square-shape of their reinforcement frames or shock absorbers serves a unique purpose, that the frame or shock absorber function in a substantially different way than the '380 Patent, or that the shape is otherwise substantially more effective than the stellar-shape of Plaintiff's '380 Utility Patent. *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) ("One way of proving infringement under the doctrine of equivalents is to show, for each claim limitation, that the accused product 'performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product.'") (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)). Because Defendants fail to provide evidence that their square reinforcement frame and shock absorber serve a substantially different function than Plaintiff's stellar versions, the Court finds that there is no genuine dispute that Defendants' products infringe on Plaintiff's '380 Patent under the doctrine of equivalents.

The Court similarly finds that Defendants' products infringe on Plaintiff's '000 Patent under the doctrine of equivalents. As previously explained, Plaintiff brings its infringement action for the '000 Patent under claim 1 of the '000 Patent. While the Court found that Defendants' use of single-sided film on top of the glass as opposed to single-sided perspective glass precluded

Plaintiff from establishing literal infringement, the Court agrees with Plaintiff that use of single-sided film is substantially equivalent to Plaintiff's use of single-sided perspective glass. Plaintiff describes the one-sided perspective glass outlined in its '000 Patent as see-through glass that comprises a translucent surface and a reflective surface. ECF No. [187-9]. Defendants' use of the single sided film is simply another means of creating both a translucent and reflective glass surface for their products and, therefore, the single-sided film serves as a functional equivalent for the perspective glass.

Defendants fail to explain how the film functions substantially differently from the single-sided perspective glass outlined in Plaintiff's '000 Patent. Accordingly, the Court finds that Defendants have infringed on claim 1 of the '000 Patent.

The Court also finds that the existence of the LED strips has no bearing on whether Defendants' products infringed on the '000 Patent. Claim 1 of the '000 Patent does not contemplate either the existence or non-existence of LED lights. Moreover, Defendants fail to make an argument or provide evidence that the presence of LED lights on their products substantially changes the function of their product, or any specific element identified in claim 1 of the '000 Patent. Accordingly, Defendants' mere use of LED lights is insufficient to prevent summary judgment on the '000 Patent infringement claim under the doctrine of equivalents.

### F.  Infringement of '993 Design Patent

"A design patent protects the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). In other words, "a design patent protects 'overall designs,' not individual features of designs. *Pride Fam. Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1224 (S.D. Fla. 2014). "Accordingly, when courts evaluate design infringement claims[,] they look

to similarities in overall design, 'not similarities of ornamental features in isolation.'" *Id.* (quoting *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)). Design patent infringement, therefore, only requires a showing that the "accused design is substantially the same as the claimed design," not identical. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993). In evaluating the similarities, the Court is guided by the ordinary observer test. *Amini Innovation Corp.*, 439 F.3d at 1371. Under this test, "if in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *12 (S.D. Fla. Jan. 25, 2021) (quoting *Gorham Co. v. White*, 14 Wall. 511, 81 U.S. 511, 528 (1871)).

Because "[d]esigns patents are typically claimed as shown in drawings," and illustrations are typically their "own best description," "[t]he proper comparison requires a side-by-side view of the drawings of the [ ] patent design and the accused products." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010). The figure below shows the '993 Patent (on the left) and the Defendants' products (on the right).

| Defendant's Name | 993' Patent | Defendants' Products |
|---|---|---|
|  |  |  |

Case No. 23-cv-24366-BLOOM/Torres



| KMT-USA | | |
|---|---|---|
| Foncusun | | |
| 360Scope | | |

Case No. 23-cv-24366-BLOOM/Torres



| MBOBAO-US | | |
| --- | --- | --- |
| Froectry USA | | |
| FEMOORER | | |

After comparing the designs, the Court finds there is no genuine dispute that the overall

visual appearance of Plaintiff's '993 design is substantially similar to the accused design. *See Elember v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995) ("Under *Gorham*, the focus of the [design infringement analysis] is on the *overall* ornamental appearance of the claimed design, not selected ornamental features.") (citing *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)). An ordinary observer would be deceived by Defendants' products, because in one comparison after another, the designs look nearly identical. Defendants offer no persuasive evidence to suggest otherwise. Indeed, the only design difference Defendants are able to identify between their products and the '993 Patent is that Defendants' products have a square-shaped reinforcement frame as opposed to stellar or pentagonal shaped frame and Defendants' products lacks specific connection parts.[27] However, "an infringing product need not be an exact copy of the patented design, and Defendants cannot escape infringement by introducing minor variations into an otherwise copycat product." *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Companies*, No. 24-CV-62197-RAR, 2025 WL 1433614, at *2 (S.D. Fla. Mar. 6, 2025) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."); *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (explaining that the focus of the inquiry is whether "the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation"). Defendants fail to explain how the shape of an interior support frame underneath the product is so distinct so as not to confuse an ordinary observer that their products are the same product as that patented by Plaintiff. As for the lack of "specific connection parts," Defendants fail to identify which

---

[27] Defendants fail to point to any specific connection part that is described in the '993 Patent that is not a part of Defendants' products.

connection parts would render Defendants' products substantially distinguishable from the design described in the '993 Patent. Accordingly, the Court grants summary judgment on Plaintiff's '993 Patent infringement claim.

**G.     Placement of Orders to Confirm Infringement**

Defendants argue that Plaintiff cannot prove infringement of any of its Patents because it has failed to provide "direct evidence, such as invoices, receipts, or purchase records, to confirm that the accused products were purchased from Defendants' Amazon stores." ECF No. [198] at 6. However, this argument is without merit. Plaintiff does not necessarily need proof of invoices, receipts, or purchase records because Plaintiff offers other sufficient evidence and, more importantly, Defendants admit that they sell the alleged infringing products in the United States and on Amazon. *See e.g.*, ECF No. [191] at 3-5; ECF Nos. [67] at 12-14 ("[T]he products being sold by Defendants are independently developed, manufactured, and patented by Kemeituo, which also operates its own stores, KMT-USA, to sell these products *and intends to continue its operations within the U.S. market.*") (emphasis added); [199-1] at 3; ECF No. [203-1]; ECF No. [199-10]. Moreover, Defendants have provided undisputed evidence of the actual products they sell in the United States and have failed to identify any distinguishable difference between the product advertisements and the actual products sold. *See* ECF No. [199-10]. Accordingly, the Court rejects Defendants' final argument as well.

**V.     CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

> 1.  Plaintiff's Motion for Summary Judgment, **ECF No. [186]**, is **GRANTED** as to Count One against Defendants for their infringement of Plaintiff's U.S. Patent No. 11,719,380 ("'380 Patent"); U.S. Patent No. 11,720,000 ("'000

Case No. 23-cv-24366-BLOOM/Torres

Patent"); and U.S. Patent No. D976,993 (the "'993 Patent").

    2.  A final judgment shall be issued by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 15, 2025.

 

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record