UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-24366-BLOOM/Torres

MARVEL TECHNOLOGY (CHINA),
Co. LTD.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## ORDER ON MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants KMT-USA, Foncusun USA, 360Scope, MBOBAO-US, Froectry USA, and FEMOORER's (collectively "Defendants") Motion for Reconsideration of the Summary Judgment Order ("Motion"). ECF No. [223]. Plaintiff Marvel Technology (China) Co. Ltd. filed a Brief in Opposition ("Response"), ECF No. [224], to which Defendants filed a Reply in Support ("Reply"). ECF No. [227]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is denied.

**I.    BACKGROUND**

On November 15, 2023, Plaintiff filed the present action for patent infringement alleging that Defendants, through e-commerce stores, are advertising, promoting, marketing, offering for sale, displaying, and soliciting for sale, Plaintiff's federally registered patents, in violation of federal patent law. *See generally* ECF No. [1]. Plaintiff thereafter filed an Amended Complaint, ECF No. [8], asserting a patent infringement claim against Defendants under the Patent Act, 35

U.S.C. § 101 *et seq.*, and 35 U.S.C. § 271, seeking monetary damages and injunctive relief. *Id.* The Amended Complaint contains only one count, which alleges Defendants have infringed and are still infringing upon the following interrelated patents: (1) Utility Patent, No. US 11,719,380, for a high-stability 360-degree photo booth (the "'380 Patent"); (2) Utility Patent, No. US 11,720,000, for a 360-degree camera device having an atmosphere lamp (the "'000 Patent"); and (3) Design Patent, No. US D976,993, for a camera platform (the "'993 Patent") (collectively "Plaintiff's Patents"). The Amended Complaint alleges Defendants deliberately infringed on Plaintiff's Patents through their unauthorized manufacture, importation, offer for sale, sale, and distribution of copies of Plaintiff's goods through Internet-based e-commerce stores and interactive commercial Internet websites. ECF No. [8] at ¶¶ 8, 18, 25.

After conducting discovery, Plaintiff filed a Motion for Summary Judgment seeking judgment for Defendants' infringement on all three of its Patents. On September 15, 2025, the Court issued an Order granting Plaintiff's Motion for Summary Judgment. ECF No. [213]. The Court concluded that there was no genuine dispute that Plaintiff had valid priority patents and that all six Defendants had infringed on Plaintiff's Patents through their advertising, promoting, marketing, offering for sale, and displaying the accused products.

Defendants have now filed the instant Motion seeking reconsideration of the Court's Order on Summary Judgment, arguing that the Court committed clear error that would result in a manifest injustice if the decision were to stand. ECF No. [223] at 1. According to Defendants, the Court improperly applied a pre-AIA "critical date" framework rather than the applicable AIA filing date framework to determine whether Defendants' evidence of previous sales and distributions of 360 photobooths constituted prior art that could support their defense that Plaintiff's Patents were not novel and therefore rendered invalid under the doctrine of anticipation. As a result, Defendants

contend the Court incorrectly excluded critical evidence that would have created a genuine question of material fact precluding summary judgment.

Additionally, Defendants argue that the Court incorrectly "excluded probative prior-art videos and the CNIPA decision under Rule [37] while simultaneously granting judgment under the doctrine of equivalents." *Id.* at 2. Defendants maintain that the Court should not have imposed the authentication requirements on their evidence, and had it not, the prior art would have resulted in a different equivalence analysis, "or, at [a] minimum, narrowly tailored supplementation and re-briefing." *Id.* However, even assuming the Court properly exercised its discretion in excluding their evidence of prior art, Defendants argue that reconsideration is nevertheless appropriate because the Court's "grant of judgment on equivalence is not supported by [Plaintiff's] particularized, limitation-by-limitation proof." *Id.* Defendants insist that, rather than requiring Plaintiff to satisfy its initial burden on each element of its claims, the Court improperly and prematurely shifted the burden onto Defendants to demonstrate there was no infringement. *See id.* at 11. Given these purported errors, Defendants request that the Court reconsider its Order and deny summary judgment.

Plaintiff responds that Defendants do not raise a valid basis for reconsideration. According to Plaintiff, even if the Court applied the wrong standard by treating the "third-party disclosures as irrelevant unless they preceded the filing dates by more than a year," it would not alter the outcome because the Court provided additional alternative reasons for refusing to consider the prior art references, including Defendants' failure to explain how the prior art references satisfied each and every element of Plaintiff's claims. ECF No. [224] at 5. As for Defendants' doctrine of equivalents argument, Plaintiff maintains that the Court imposed the proper burden-shifting framework and that any evidence Defendants contend would serve to rebut Plaintiff's prima facie

3

case was properly excluded. *See id.* at 6-7.

## II. LEGAL STANDARD

"While the Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration, such a motion can be treated as either a Motion to Alter or Amend Judgment under Rule 59(e) or a Motion for Relief from Judgment under Rule 60(b)."[1] *Dingman v. Cart Shield USA, LLC*, No. 12-cv-20088, 2013 WL 2034984, at *2 (S.D. Fla. May 14, 2013) (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n. 5 (11th Cir. 1993)).

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).[2] "Relief is proper under Rule 59(e) only if the party presents newly discovered evidence or demonstrates a manifest error of law or fact." *Marques v. JP Morgan Chase, N.A.*, 805 F. App'x 668, 670 (11th Cir. 2020) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007)). Under Federal Rule of Civil Procedure 60(b), "courts may relieve a party from a judgment or order on several grounds, including (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment is no longer in effect; and (6) 'any other reason that justifies relief.'" *Marques*, 805 F. App'x at 671 (quoting Fed. R. Civ. P. 60(b)).[3]

---

[1] To the extent that Defendants also seek relief pursuant to Rule 54(b), the standard for relief is the same as a motion for reconsideration under Rule 60. *See Clifft v. Sch. Dist. of Lee Cnty.*, No. 2:25-CV-345-JES-DNF, 2025 WL 3080533, at *1 (M.D. Fla. Nov. 4, 2025) (citing *Herman v. Hartford Life and Acc. Ins. Co.*, 508 F. App'x. 923, 927 n.1 (11th Cir. 2013)).

[2] The Court does not consider Defendants' Motion pursuant to Rule 59(e) because Defendants did not file their Motion until 30 days after the Court had entered its Summary Judgment Order. See ECF Nos. [213], [223].

[3] For a motion for relief from judgment to be successful under the catchall provision—Rule 60(b)(6)—the movant "must demonstrate 'that the circumstances are sufficiently extraordinary to warrant relief.'" *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000)).

Case No. 23-cv-24366-BLOOM/Torres

A motion for reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. Jan. 8, 2002). "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *Saint Croix Club of Naples, Inc. v. QBE Ins. Corp.*, No. 2:07-cv-00468-JLQ, 2009 WL 10670066, at *1 (M.D. Fla. June 15, 2009) (citing *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)).

Because court opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," a motion for reconsideration must clearly "set forth facts or law of a strongly convincing nature to demonstrate to the Court the reason to reverse its prior decision." *Am. Ass'n of People with Disabilities v. Hood*, 278 F. Supp. 2d 1337, 1339, 1340 (M.D. Fla. July 25, 2003) (citations omitted). As such, a court will not reconsider its prior ruling without a showing of "clear and obvious error where the 'interests of justice' demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)). "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." *Taylor Woodrow Constr. Corp.*, 814 F. Supp. at 1072-73; *see also Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 n.2 (S.D. Ala. 2008) (noting that reconsideration motions are to be used sparingly, and stating, "imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request"). A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citation omitted).

Thus, a motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v. Grant Thornton, LLP*, No. 14-61194-CIV, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. Dec. 3, 1992) (internal quotation marks omitted)). "Such problems rarely arise and the motion to reconsider should be equally rare." *Burger King Corp.*, 181 F. Supp. 2d at 1369. Ultimately, reconsideration is a decision that is "left 'to the sound discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No. 6:18-cv-1149-Orl-78DCI, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

## III. DISCUSSION

### A. America Invents Act ("AIA")—35 U.S.C. § 102

Defendants argue that the Court improperly excluded evidence of the third party, Kemeituo's, sales and distribution of 360 photobooths on 1688.com beginning on March 4, 2022, by utilizing a pre-AIA[4] § 102(b) "critical date" analysis that does not govern here. ECF No. [223] at 3. Defendants assert that the AIA "applies to applications filed on or after March 16, 2013." Therefore, because Plaintiff's Patents were all filed in either 2022 or 2023, the AIA controls. *Id.* Defendants explain that generally under the AIA, prior art[5] renders a claimed invention

---

[4] The acronym "AIA" refers to the Leahy-Smith America Invents Act. *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 125, 139 S. Ct. 628, 629, 202 L. Ed. 2d 551 (2019). "Congress amended [35 U.S.C.] § 102 when it enacted the AIA" in 2011, "shifting the 'first-to-invent' system to a 'first-inventor-to-file' regime." *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (citing Pub. L. No. 112-29, § 3(b)(1), 125 Stat. at 285-87)); *Celanese Int'l Corp. v. Int'l Trade Comm'n*, 111 F.4th 1338, 1344 (Fed. Cir. 2024). However, the amendments in the AIA only apply to patents filed after March 16, 2013.

[5] When the Court refers to "prior art," it is referring to the disclosures described in 35 U.S.C. § 102(a)(1).

6

"unpatentable if [the prior art] was 'in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.'" *Id.* at 4 (quoting 35 U.S.C. § 102(a)(1)). Following the enactment of the AIA, the requirement that prior art be disclosed more than one-year before the filing date, i.e., the "critical date," now only applies in a narrow set of circumstances where there is either (1) "disclosures made by the inventor or a joint inventor," or (2) "disclosures made by another who obtained the subject matter from the inventor." ECF No. [223] at 5; *see also* 35 U.S.C. § 102(b)(1). Defendants insist that the § 102(b)(1) exceptions do not apply under the circumstances present here,[6] and therefore, prior art invalidates Plaintiff's Patents if it was in public use or on sale at any time before Plaintiff's Patents were filed with the United States Patent and Trademark Office. Defendants point out that Plaintiff's '380 Patent was filed on October 28, 2022, the '000 Patent was filed on January 19, 2023, and the '993 Patent was filed on August 1, 2022. Therefore, since the record evidence indicates that Kemeituo's 360 photobooths were on sale or otherwise available for distribution on 1688.com as early as March 4, 2022, Defendants argue the 1688.com evidence establishes the existence of prior art predating the filling dates of the '380, '000, and the '993 Patents thereby creating a genuine question of fact as to the validity of Plaintiff's Patents.

While Defendants acknowledge that a disclosure or reference must map onto every element of a patent claim before it will constitute prior art, Defendants insist that they have satisfied their burden, notwithstanding their failure to put forth evidence that the Kemeituo photobooths available on 1688.com matched every element of the patent claims at issue here. Defendants point out that

---

*See Helsinn Healthcare S.A.*, 586 U.S. at 127, 139 S. Ct. at 632.

[6] Even though there is evidence in the record that Plaintiff's employee sold one of its 360 photobooths to a Kemeituo legal representative in 2021, Defendants argue the two narrow exceptions for using the "critical date" framework under 35 U.S.C. § 102(b)(1) still do not apply because the Summary Judgment Order did not find that the 1688.com products were based on the 360 Photobooth Kemeituo received from Plaintiff.

Plaintiff provided "detailed claim mappings and a stand-alone claim chart showing that the accused products 'contain each and every element' of the asserted utility claims and meet the D'993 design, element-by-element and image-by-image." *Id.* at 7. Defendants also contend that there is no dispute that Kemeituo manufactured both Defendants' accused products and the products that were on sale on 1688.com in March 2022. Therefore, because Kemeituo manufactured both products, Defendants argue that Plaintiff's mapping of the accused products can be equally applied to the 1688.com products. Accordingly, Defendants maintain their 1688.com evidence establishes a genuine issue of material fact as to the validity of Plaintiff's Patents, which warrants the Court's reconsideration.

Plaintiff responds that even assuming the filing date rather than the critical date should have been used to determine whether Defendants' evidence constituted prior art, "the Court provided more than just this basis for its refusal to consider Defendants' evidence of alleged prior art sales." ECF No. [224] at 5. Regarding the 1688.com evidence in particular, Plaintiff points out that the Court also excluded that evidence because "Defendants failed to explain how the products allegedly sold satisfied *each and every element* of any of the claims." *Id.* (quoting ECF No. [213] at 33 (emphasis in the original)). Given that satisfying the initial burden of mapping the elements of the claims onto any alleged prior art is an integral part of establishing invalidity by anticipation, Plaintiff contends that Defendants cannot now seek to revive their affirmative defense by making new arguments for the first time on reconsideration after having numerous opportunities to make such arguments during the multiple rounds of prior briefing. *See id.*

The Court agrees with Plaintiff. Assuming that under the circumstances here, 35 U.S.C. § 102 does not impose a "critical date" framework for determining whether a patent has been anticipated by prior art, the Court provided multiple other reasons for rejecting Defendants'

anticipation defense, none of which are successfully addressed by Defendants' instant Motion. With respect to the evidence of the YouTube videos and the Chinese National Intellectual Property Administration ("CNIPA") decision, the Court found the evidence should be excluded pursuant to Rule 37, as the evidence was not timely disclosed to Plaintiff during discovery. Moreover, the Court found that Defendants were unable to demonstrate that the YouTube videos were capable of authentication. Accordingly, such evidence of anticipation was properly excluded on other grounds.[7]

Turning to the evidence of the Chengdu Top Technology Co., Ltd.'s U.S. Design Patent No. D958,222, the Court found that evidence also could not support Defendants' anticipation defense because Defendants failed "to explain how the D958,222 Patent anticipated the claim elements of the '000 Patent or the design of [the] '993 Patent, and the Court w[ould] not do Defendants' work for them." *Id.* at 35.

Finally, regarding the evidence of the "similar [photobooth] products on 1688.com," although the Court rejected the evidence in part by way of its "critical date" analysis, the Court also found the 1688.com products could not help establish Defendants' anticipation defense because Defendants had failed to "show that each and every element as set forth in the claim is found, either expressly or inherently, in [the] single prior art reference." ECF No. [213] at 33 (internal citations and quotations omitted). Defendants contend that although they did not provide their own mapping of the 1688.com products to the Plaintiff's Patents, they nevertheless have

---

[7] While Defendants disagree with the exclusion of the evidence under Rule 37, they fail to identify any clear error or misapprehension by the Court. Defendants are simply unsatisfied with the Court's exercise of discretion and attempt to relitigate the issue in hopes of changing the Court's mind. *See Butler v. Tech. Coll. Sys. of Georgia*, No. 1:21-CV-03057-SCJ, 2021 WL 9629057, at *1 (N.D. Ga. Nov. 23, 2021) ("A motion for reconsideration may not be used simply to 'repackage familiar arguments to test whether the Court will change its mind.'") (quoting *Chesnut v. Ethan Allen Retail, Inc.*, 17 F. Supp. 3d 1367, 1370 (N.D. Ga. 2014)).

satisfied their burden to show anticipation based on Plaintiff's own infringement evidence. According to Defendants, "Plaintiff's expert delivered detailed claim charts mapping each element of at least Claim 8 of the '380 patent to every accused device, with photographs of the reinforcement frame, shock absorbers, and support plate." ECF No. [227] at 3. Defendants point out that the expert report "expressly concludes that [Defendants'] accused products 'replicate each essential element.'" *Id.* (quoting Weissbrot Report). Therefore, because both the anticipatory 1688.com products and Defendants' accused products were manufactured by Kemeituo, Defendants insist that Plaintiff's element-by-element infringement analysis applies equally to the Kemeituo products sold on 1688.com in March 2022. Therefore, were the Court to have considered the 1688.com products for the purposes of anticipation, Defendants contend that Plaintiff's own evidence would show that the 1688.com products satisfy every element of Plaintiff's patent claims.

Despite their insistence to the contrary, Defendants cannot adopt Plaintiff's claim-by-claim infringement analysis to show that the 1688.com products sold in March 2022 anticipated Plaintiff's Patents. Not only is Defendants' argument improperly raised for the first time in a motion for reconsideration,[8] Defendants have failed to show that the 1688.com products are the same as the accused products in question. Simply because the parties agree that Kemeituo manufactured both Defendants' products and the products that were sold on 1688.com does not necessarily mean those products consisted of identical elements or overall design. Indeed, Defendants simply argued on summary judgment that there was a "wholesale distribution of *similar* products on 1688.com by March 4, 2022," not the *same* products. ECF No. [198] at 4 (emphasis added). Kemeituo may have very well changed the design and/or function of their 360

---

[8] Indeed, in Defendants' Response to Plaintiff's Motion for Summary Judgment, Defendants maintained that Plaintiff failed to establish that their products infringed upon Plaintiff's Patents "as they lack key claim elements." ECF No. [198] at 2.

photobooths from the time they first began selling their products on March 4, 2022, to the time Defendants began selling their products. Accordingly, because there is insufficient evidence demonstrating that the 1688.com products and the accused products are the same, the Court may not rely on Plaintiff's infringement analysis of the accused products to conclude that Defendants have created a genuine issue of material fact as to the validity of Plaintiff's Patents based on the sale of the 1688.com products.

Therefore, given the alternative grounds for the Court's decision, none of the Court's conclusions regarding Defendants' anticipation evidence hinged on Defendants contention of an improper application of the § 102 framework. Accordingly, because Defendants put forth no other evidence to support their anticipation defense, the Court finds no clear error in its conclusion that Defendants failed to create a genuine issue of material fact as to the validity of Plaintiff's Patents.

### B. Doctrine of Equivalents

Defendants also argue that the Court improperly applied the doctrine of equivalents. ECF No. [223] at 11. According to Defendants, the Court erroneously placed the initial burden on them rather than on Plaintiff. Therefore, the Court incorrectly faulted "Defendants for not 'providing evidence' of differences [between the accused products and Plaintiff's Patents] and treat[ed] that omission as a basis to grant Plaintiff's motion." *Id.* Defendants contend that the Court did not require Plaintiff to show on a "limitation-by-limitation basis" that the accused products had identical or at least substantially similar elements, but rather allowed Plaintiff to rely upon conclusory and high-level assertions of equivalence. *Id.* at 11-12.

Plaintiff responds that while Defendants contend "that the Court 'inverted the framework' on [the] doctrine of equivalents[,] . . . the Court [in fact] carefully assessed the only alleged differences between the inventions of Plaintiff's Patents and Defendants' infringing products, and

11

found that 'there [wa]s no genuine dispute' concerning infringement." ECF No. [224] at 7 n. 3. Therefore, according to Plaintiffs, Defendants cannot now attempt to relitigate the issue simply because they received an unfavorable ruling.

There is no need to reconsider the doctrine of equivalents analysis for the two utility patents, as the Court finds that it properly imposed the initial burden on Plaintiff to establish that each element of its patent claims had been infringed by the accused products. With respect to the '380 Patent, the Court explained that Defendants conceded "that their products possess all the claimed infringing features except that their products d[id] not possess a reinforcement frame or shock absorber that [are] 'stellar-shaped.'" ECF No. [213] at 37. Accordingly, the only elements that the Court needed to analyze for the '380 Patent were the reinforcement frames and the shock absorbers. The Court explained in detail why it found that the accused products' shock absorbers and reinforcement frames were substantially similar to Plaintiff's Patent, notwithstanding the difference in shape. *See id.* at 41. Only then did the Court look to Defendants to see whether they could point to evidence to rebut Plaintiff's *prima facie* case.

Similarly, with respect to the '000 Patent, the only element in dispute was the single-sided perspective glass. *Id.* at 38. The Court determined that Plaintiff's evidence showed that "Defendants' use of the single[-]sided film [was] simply another means of creating both a translucent and reflective glass surface for their products" and, therefore, "the single-sided film serve[d] as a functional equivalent for the perspective glass." *Id.* at 42. The Court then shifted the burden to Defendants who failed to explain how their "film function[ed] substantially differently from the single-sided perspective glass outlined in Plaintiff's '000 Patent." *Id.* Therefore, the Court utilized the proper burden-shifting approach in its doctrine of equivalents analysis for both the

12

'380 Patent and the '000 Patent.[9] As such, the Court finds no basis for reconsideration.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Reconsideration of the Summary Judgment Order, **ECF No. [223]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 25, 2025.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[9] The doctrine of equivalents does not apply to design patents, and as such, Defendants' argument does not reach the '993 Patent. In any event, the Court concludes that it applied the proper burden shifting framework to the '993 Patent as well by first looking at Plaintiff's side-by-side comparison of the designs and then looking to Defendant to see whether they could identify differences in the their products design that would reasonably convince an ordinary observer that the accused design is not substantially the same as the '993 Patent design.